BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: PASSENGER VEHICLE REPLACEMENT TIRES ANTITRUST LITIGATION | MDL No. |

**MEMORANDUM IN SUPPORT OF PLAINTIFF SAMPAYAN'S MOTION TO TRANSFER AND CENTRALIZE RELATED ACTIONS FOR CONSOLIDATED OR COORDINATED PRETRIAL PROCEEDINGS**

Plaintiff Rena Sampayan ("Movant") respectfully submits this memorandum of law in support of her Motion to Transfer and Centralize Related Actions for Consolidated or Coordinated Pretrial Proceedings.[1] To date, fourteen related cases have been filed in three districts each alleging that some of the largest tire manufacturers in the United States and globally conspired to artificially increase and fix the prices of new replacement tires for passenger cars, vans, trucks and buses sold in the United States in violation of federal and state antitrust laws. Transfer and centralization of the related actions to the Southern District of New York—where the vast majority of the cases are pending—will advance the efficient resolution of this litigation and serve the convenience of the parties and witnesses. The district has extensive experience with multidistrict antitrust litigation and provides convenient access to Europe in this litigation involving multiple European defendants.

**FACTUAL AND PROCEDURAL BACKGROUND**

This litigation concerns the market for new replacement tires for passenger vehicles in the United States that are selected and purchased by consumers (as opposed to original

---

[1] Plaintiff in *Sampayan v. Continental Aktiengesellschaft.*, Case No. 1:24-cv-00881 (S.D.N.Y.).

equipment tires that are specified by vehicle manufacturers and fitted onto new vehicles).  ¶¶ 1, 44-48.[2]  The replacement tire market in the United States was valued at $61 billion in 2022 and is concentrated in the hands of a few companies: Defendants Bridgestone, Michelin, and Goodyear made up almost 64 percent of the entire market in 2022 while the remainder includes Defendants such as Continental and Nokian.[3]  ¶¶ 46, 75-76.  Many Defendants, such as Goodyear, sell directly to consumers in the United States through retail locations or online.  ¶¶ 10, 22.  Plaintiff alleges that Defendants engaged in a conspiracy to restrain trade by an agreement or understanding to raise and maintain prices for new replacement passenger vehicle tires at artificially high levels in the United States.  ¶¶ 1-3, 78-101.  While the price of replacement tires was relatively stable between 2011 and 2020, tire prices increased dramatically in the past four years due to frequent and synchronized price hikes by Defendants.  ¶¶ 49-77.  The price increases have been disproportionate to Defendants' increased costs during the COVID-19 pandemic and tire prices have remained high even as the pandemic has subsided and the factors driving inflation have dissipated.  ¶¶ 71-72.  On January 30, 2024, the European Commission ("EC") announced that it had conducted dawn raids on Defendants' premises over

---

[2] All "¶" references are to paragraphs in the Complaint filed in the *Sampayan* action.  Case No. 1:24-cv-00881, Dkt. 1 (S.D.N.Y.).
[3] Defendants include Continental Aktiengesellschaft; Continental Tire the Americas, LLC; Compagnie Générale des Établissements; Compagnie Générale des Établissements Michelin SCA; Compagnie Financière Michelin SA; Michelin North America, Inc.; Nokian Tyres plc; Nokian Tyres Inc; Nokian Tyres North America, Inc.; Nokian Tyres U.S. Operations LLC; The Goodyear Tire & Rubber Company; Pirelli & C. S.p.A.; Pirelli Tire LLC; Bridgestone Corporation; Bridgestone Americas, Inc.; Hankook Tire & Technology Co., Ltd.; Hankook Tire America Corp.; Yokohama Rubber Co., Ltd.; Yokohama Tire Corporation; Toyo Tire Corporation; Toyo Tire U.S.A. Corp.; Kumho Tire Co.; Kumho Tire U.S.A.; Sumitomo Rubber Industries, Ltd.; Sumitomo Rubber North America, Inc.; GITI Tire Global Trading Pte. Ltd.; and Giti Tire (USA) Ltd.

the suspicion that the companies were violating European Union antitrust rules regarding price coordination. ¶ 2.

Beginning on February 7, 2024, at least fourteen class action complaints have been filed regarding the alleged conspiracy to fix the prices of passenger vehicle replacement tires in the United States:

- Eleven cases in the Southern District of New York currently pending before the Hon. Edgardo Ramos consisting of:
    - Seven direct purchaser actions: *Sampayan v. Continental Aktiengesellschaft, et al.*, No. 1:24-cv-00881 (February 7, 2024); *Islami v. Continental Aktiengesellschaft, et al.*, No. 1:24-cv-00967 (Feb. 8, 2024); *Alford v. Bridgestone Corporation, et al.*, No. 1:24-cv-01038 (Feb. 12, 2024); *Edwards v. Continental Aktiengesellschaft, et al.*, No. 1:24-cv-01092 (Feb. 14, 2024); *Torres v. Continental Aktiengesellschaft, et al.*, No. 1:24-cv-01124 (Feb. 15, 2024); *Davidov, et al., v. Continental Aktiengesellschaft, et al.*, No. 1:24-cv-01367 (Feb. 22, 2024); *Curran v. The Goodyear Tire & Rubber Co., et al.*, No. 1:24-cv-01419 (Feb. 23, 2024).
    - Four indirect purchaser actions: *Purcell, et al. v. Continental Aktiengesellschaft, et al.*, No. 1:24-00938 (Feb. 8, 2024); *Wilkerson Farms ET, LLC v. Continental Aktiengesellschaft, et al.*, No. 1:24-00970 (Feb. 9, 2024); *Novak v. Continental Aktiengesellschaft, et al.*, No. 1:24-cv-01202 (Feb. 16, 2024); *Spadafino v. Continental Aktiengesellschaft, et al.*, No. 1:24-01452 (Feb. 26, 2024).

- Two indirect purchaser actions in the District of South Carolina currently pending before the Hon. Jacquelyn D. Austin: *Link v. Continental Aktiengesellschaft, et al.*, No. 6:24-cv-00913 (Feb. 23, 2024); *Valenzano v. Continental Aktiengesellschaft, et al.*, No. 6:24-cv-00948 (February 23, 2024).
- One direct purchaser action in the Northern District of Ohio before the Hon. Sara Loi, *Bengel v. Continental Aktiengesellschaft, et al.*, No: 5:24-cv-00363 (Feb. 27, 2024).

The Related Actions (*see* Schedule of Related Actions submitted herewith) involve overlapping Defendants and each alleges that Defendants conspired to fix the prices of new replacement tires for passenger cars, vans, trucks, and buses sold in the United States in violation of federal and state antitrust and consumer protection laws.  Each Related Action alleges lockstep price increases and similar factors that corroborate Defendants' horizontal price-fixing agreement, including the EC's announcement, the sudden and dramatic parallel price increases, the high levels of market concentration, the significant barriers to entry, the inelastic demand for replacement tires, and Defendants' history of antitrust violations.  Each of the Related Actions seeks compensatory damages and injunctive relief on behalf of direct or indirect purchasers of tires in the United States from January 1, 2020, until Defendants' anticompetitive conduct ceased.  The Related Actions are also in a similar procedural posture as all are in the very earliest stages of litigation and no dispositive motions have been filed and discovery has yet to commence.

## ARGUMENT

I. **CENTRALIZATION OF THE RELATED ACTIONS IS WARRANTED UNDER 28 U.S.C. § 1407**

"When civil actions involving one or more common questions of fact are pending in different districts," this Panel may transfer such actions "to any district for coordinated or consolidated pretrial proceedings," if transfer would serve "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Because these requirements are met here, the Panel should transfer the Related Actions to a single district for coordinated or consolidated pretrial proceedings.

A. **The Related Actions Involve Common Questions of Fact**

For purposes of Section 1407, common questions of fact exist where multiple actions assert similar "core factual allegations" and "can be expected to focus on a significant number of common events, defendants, and/or witnesses." *In re Unumprovident Corp. Sec., Derivative & "ERISA" Litig.*, 280 F. Supp. 2d 1377, 1379 (J.P.M.L. 2003).

The Related Actions satisfy the requirements of Section 1407(a) because they involve common defendants and overlapping conduct, and the Panel routinely finds that centralization is appropriate for cases involving alleged violations of antitrust laws. *See, e.g., In re Qualcomm Antitrust Litig.*, 273 F. Supp. 3d 1373, 1375 (J.P.M.L. 2017) ("Plaintiffs in all the actions listed on Schedule A assert similar claims for violations of federal and state antitrust and consumer protection laws."); *In re Visa/Mastercard Antitrust Litig.*, 295 F. Supp. 2d 1379, 1380 (J.P.M.L. 2003) ("All six actions share factual questions relating to allegations that Visa and MasterCard's 'Honor All Cards' policy violates the Sherman Antitrust Act."); *In re Polyester Staple Antitrust Litig.*, 259 F. Supp. 2d 1376, 1377 (J.P.M.L. 2003) (cases arising out of alleged price fixing shared common factual questions); *In re Parcel Tanker Shipping Servs. Antitrust Litig.*, 296 F.

5

Supp. 2d 1370, 1371 (J.P.M.L. 2003) ("All actions share factual questions relating to the existence, scope and effect of an alleged conspiracy to fix the price of international shipments of liquid chemicals in the United States.").

Each Related Action is also brought on behalf of a nationwide class and asserts antitrust claims under federal law. *See In re Cotton Yarn Antitrust Litig.*, 336 F. Supp. 2d 1383, 1384 (J.P.M.L. 2004) ("All actions share factual questions relating to the existence, scope and effect of an alleged conspiracy to fix the price of cotton yarn in the United States and/or to allocate the U.S. cotton yarn market and customers."); *In re Domestic Airline Travel Antitrust Litig.*, 140 F. Supp. 3d 1344, 1345 (J.P.M.L. 2015) ("All of the actions assert overlapping putative nationwide classes of direct purchasers of domestic airfare, and all the actions assert antitrust violations of Section 1 of the Sherman Act."); *In re K-Dur Antitrust Litig.*, 176 F. Supp. 2d 1377, 1378 (J.P.M.L. 2001) (similar).

The Panel likewise frequently centralizes direct and indirect purchaser actions together. *See, e.g.*, *In re: Lidoderm Antitrust Litig.*, 11 F. Supp. 3d 1344, 1345 (J.P.M.L. 2014) ("All of the actions are putative nationwide class actions on behalf of either direct or indirect purchasers."); *In re Capacitors Antitrust Litig. (No. III)*, 285 F. Supp. 3d 1353, 1355 (J.P.M.L. 2017).

While some of the indirect purchaser plaintiffs in the Related Actions bring additional claims for violations of state antitrust and consumer protection laws on behalf of state subclasses, the Panel has "often . . . held that the assertion of different legal claims or additional facts is not significant where, as here, the actions arise from a common factual core" and that transferee judges are more than capable of applying the laws of multiple states. *In re Insulin Pricing Litig.*, No. MDL 3080, 2023 WL 5065090, at *2 (J.P.M.L. Aug. 3, 2023).

The Related Actions therefore share one or more common questions of fact under Section

1407(a).

      **B.**      **Centralization Would Serve the Convenience of Parties and Witnesses and Promote the Just and Efficient Conduct of The Related Actions**

Because the Related Actions' factual allegations and legal claims largely overlap, transfer would serve "the convenience of parties and witnesses and . . . promote the just and efficient conduct" of the Related Actions. 28 U.S.C. § 1407(a). There are already fourteen actions pending in three districts. *See e.g.*, *In re Delta Dental Antitrust Litig.*, 433 F. Supp. 3d 1358 (J.P.M.L. 2020) (centralizing fourteen actions pending in three districts in the district where "half of the related actions…are pending"); *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 355 F. Supp. 3d 1382 (J.P.M.L. 2019) (centralizing four actions pending in three districts); *In re Diisocyanates Antitrust Litig.*, 341 F. Supp. 3d 1376, 1377 (J.P.M.L. 2018) (centralizing twelve actions filed in three districts involving antitrust allegations where "discovery is likely to be international in scope"). Given the likelihood that additional cases will be filed, centralization under section 1407 now would be the most efficient means of proceeding. *See, e.g., In re: Edward H. Okun I.R.S. |1031 Tax Deferred Exch. Litig.*, 609 F. Supp. 2d 1380, 1381 (J.P.M.L. 2009) ("[D]enial of either of Wachovia's transfer motions could engender delay, as the Panel may be asked to revisit the question of Section 1407 centralization. Centralizing these actions now under Section 1407 should streamline resolution of this litigation to the overall benefit of the parties and the judiciary."); *In re: AndroGel Prod. Liab. Litig.*, 24 F. Supp. 3d 1378, 1379 (J.P.M.L. 2014) (rejecting alternatives to centralization because they "would delay the resolution of the common core issues in this litigation").

Centralization is also appropriate because the plaintiffs in the Related Actions will undoubtedly pursue substantially similar testimony, documents, and other evidence from Defendants, but the 14 actions are proceeding in three separate districts in different states each

with distinct groups of Plaintiffs' counsel.  Centralizing the Related Actions will have "the salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties." *In re Cook Med., Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, 949 F. Supp. 2d 1373, 1375 (J.P.M.L. 2013); *In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1390 (J.P.M.L. 2014) ("Transfer under Section 1407 will offer the benefit of placing all related actions before a single judge who can structure pretrial proceedings to accommodate all parties' legitimate discovery needs while ensuring that common witnesses are not subjected to duplicative discovery demands.")

Moreover, because the Related Actions have many common questions of fact and law, they will also have many overlapping pretrial issues, including the adequacy of the claims and allegations.  And because each Related Action is a class action, centralization will eliminate the possibility of inconsistent rulings on class certification from courts in three districts.  *See, e.g., In re: Zimmer Durom Hip Cup Prod. Liab. Litig.*, 717 F. Supp. 2d 1376, 1377 (J.P.M.L. 2010) ("Centralization under Section 1407 will eliminate duplicative discovery, prevent inconsistent pretrial rulings on discovery and other issues, and conserve the resources of the parties, their counsel and the judiciary.").

For these reasons, the Panel should centralize the Related Actions in the interests of justice and efficiency.

## II.  THE PANEL SHOULD TRANSFER THE RELATED ACTIONS TO THE SOUTHERN DISTRICT OF NEW YORK

In determining the appropriate transferee district, the Panel considers a variety of factors, including: (1) whether the district "offers a forum that is both convenient and accessible for the parties and witnesses"; (2) the location of "relevant witnesses and evidence"; (3) the positions of

the parties; and (4) the experience of the transferee judge and district in navigating "the nuances of complex and multidistrict litigation." *In re: Aggrenox Antitrust Litig.*, 11 F. Supp. 3d 1342, 1343 (J.P.M.L. 2014).  Movant submits that the Southern District of New York is well-suited for these cases.  The majority of the cases—11 out of 14—have been filed in the district, including all of the earliest-filed cases.[4]  *See In re Cotton Yarn*, 336 F.Supp.2d at 1384 (selecting district where "six of the seven actions in this litigation are currently pending"); *In re Treasury Sec. Auction Antitrust Litig.*, 148 F. Supp. 3d 1360, 1362 (J.P.M.L. 2015) (selecting district in part because "the vast majority of actions" were pending there); *In re Microcrystalline Cellulose Antitrust Litig.*, 149 F. Supp. 2d 935, 936 (J.P.M.L. 2001) (same); *see also In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*, 412 F. Supp. 3d 1344, 1346 (J.P.M.L. 2019) (selecting district in part because "[t]he three earliest-filed actions are pending there…").

In addition, because this litigation involves an alleged sprawling conspiracy spanning the United States and around the world, the Panel should select a district that is "geographically central and accessible."[5]  *In re: DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 787 F. Supp. 2d 1358, 1360 (J.P.M.L. 2011).  New York City is a convenient location for the parties and witnesses.  Defendant Michelin North America, Inc. is incorporated under the laws of New York and several Defendants, as well as likely witnesses, are based in Europe.  *See In re: Libor-Based Fin. Instruments Antitrust Litig.*, 802 F. Supp. 2d 1380, 1381 (J.P.M.L. 2011) (noting the Southern District of New York is "also relatively more convenient for those

---

[4] *See* Judicial Panel on Multidistrict Litigation, *MDL Statistics Report—Distribution of Pending MDL Dockets by District* (February 1, 2024), *available at* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-February-1-2024.pdf  (last visited February 23, 2024).
[5] Defendants are based in the United States, France, Finland, Germany, Italy, Japan, and South Korea.

defendants based in the United Kingdom and Europe"); *In re Parmalat Sec. Litig.*, 350 F. Supp. 2d 1356, 1357 (J.P.M.L. 2004) (selecting the Southern District of New York in part because it "is relatively conveniently located for parties and witnesses and their counsel located both in the United States and abroad."); *see, e.g., In re Eur. Rail Pass Antitrust Litig.*, No. MDL1386, 2001 WL 587855, at *1 (J.P.M.L. Feb. 7, 2001) (centralizing antitrust actions in the district); *In re Fed. Home Loan Mort. Corp. Sec. & Derivative Litig. (No. II)*, 303 F. Supp. 2d 1379, 1380 (J.P.M.L. 2004); *In re AOL Time Warner, Inc.*, 235 F. Supp. 2d 1380, 1381 (J.P.M.L. 2002).

Judge Edgardo Ramos, who is currently presiding over all the Related Actions pending in the Southern District of New York, is a capable jurist "who has not yet had the opportunity to preside over an MDL." *In re Fisher-Price Rock 'N Play Sleeper Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2903, 2019 WL 4010712, at *2 (J.P.M.L. 2019); *see In re Stryker Orthopaedics LFIT V40 Femoral Head Prod. Liab. Litig.*, 249 F. Supp. 3d 1353, 1356 (J.P.M.L. 2017) (same). The Southern District of New York possesses substantial resources and has a track record of efficiency,[6] routinely handles multidistrict antitrust litigation,[7] and has many experienced jurists who can manage this complex multi-party litigation. *See In re: Aggrenox*, 11 F. Supp. 3d at 1343 (considering experience of district); *In re Adelphia Commc'ns Corp. Sec. &*

---

[6] For example, the median time from filing to disposition for civil cases is shorter in the Southern District of New York (5.6 months), than the District of South Carolina (8 months), or the Northern District of Ohio (8.2 months). *See* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison1231.2023.pdf (last visited Feb. 27, 2024).

[7] *See, e.g.*, *In re Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d 1372, 1379 (J.P.M.L. 2021) (centralizing in the Southern District of New York); *In re Inclusive Access Course Materials Antitrust Litig.*, 482 F. Supp. 3d 1358, 1360 (J.P.M.L. 2020) (same); *In re Int. Rate Swaps Antitrust Litig.*, 190 F. Supp. 3d 1364, 1366 (J.P.M.L. 2016) (same); *In re: Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 24 F. Supp. 3d 1361, 1363 (J.P.M.L. 2014) (same); *In re: London Silver Fixing, Ltd., Antitrust Litig.*, 52 F. Supp. 3d 1381 (J.P.M.L. 2014) (same).

*Derivative Litig. (No. II)*, 273 F. Supp. 2d 1353, 1355 (J.P.M.L. 2003) (concluding that the district "possesses the necessary resources to be able to devote the substantial time and effort to pretrial matters that this complex docket is likely to require.").

The Southern District of New York is therefore a suitable transferee district and Judge Ramos, or another judge from the district, will help steer this litigation on a prudent course.

## CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Panel transfer and promptly centralize the Related Actions before the Hon. Edgardo Ramos of the Southern District of New York or another judge in the district.

Dated: February 27, 2024

Respectfully submitted,

By: */s/ Dena C. Sharp*

Dena C. Sharp
Adam E. Polk
Kyle P. Quackenbush
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel:  415-981-4800
Fax: 415-981-4846
dsharp@girardsharp.com
apolk@girardsharp.com
kquackenbush@girardsharp.com

*Counsel for Movant and Plaintiff Sampayan*