BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| IN RE: PASSENGER VEHICLE REPLACEMENT TIRES ANTITRUST LITIGATION | : : : : : | MDL No. 3107 |

**INTERESTED PARTY RESPONSE OF PLAINTIFF KENNETH WILLIAMS
IN SUPPORT OF TRANSFER OF RELATED ACTIONS
TO THE EASTERN DISTRICT OF MICHIGAN**

Direct Purchaser Plaintiff Kenneth Williams in *Williams v. Continental Aktiengesellschaft,* No. 24-cv-10632 (E.D. Mich.) submits this response to Plaintiff Rena Sampayan's request for transfer and centralization of certain related actions before the Southern District of New York. Responding Plaintiff Williams supports centralization under 28 U.S.C. 1407 but proposes transfer instead to the Eastern District of Michigan, where Judge Terrence Berg is presiding over the *Williams* action. The Eastern District of Michigan is readily accessible to the geographically dispersed parties and has "the capacity and experience to steer this litigation on a prudent course." *See In re Janus Mut. Funds Inv. Litig.,* 310 F. Supp. 2d 1359, 1361 (J.P.M.L. 2004).

I. **BACKGROUND**

As of the date of this filing, a total of seventeen cases have been identified on the docket as Related Actions for this multidistrict litigation. The actions have been filed on behalf of ten direct purchaser classes and seven indirect purchaser classes in four different jurisdictions,

including the Eastern District of Michigan, the District of South Carolina, the Northern District of Ohio, and the Southern District of New York.[1]

Each Related Action alleges that Defendants unlawfully conspired to fix, maintain, and raise to supracompetitive levels the price of replacement tires in violation of Section 1 of the Sherman Act (15 U.S.C. § 1), and each indirect purchaser action also alleges that these practices violated state antitrust laws. Five actions (direct and indirect) also allege violation of Section 3 of the Sherman Act (15 U.S.C. § 3), and all but one of the indirect purchaser actions also allege violations of state trade practice laws, violations of state consumer protection laws, and/or unjust enrichment.

The Related Actions involve overlapping Defendants, allege similar underlying facts, and seek compensatory damages and injunctive relief on behalf of the classes proposed in their respective complaints. Each Related Action is at an early stage of the proceedings, where the parties have not yet filed responsive pleadings or dispositive motions or commenced the discovery process. Now is the ideal time to centralize these actions.

## II.     ARGUMENT

Transfer of civil actions pending in different districts is appropriate where the actions involve one or more common questions of fact, and transfer will serve the convenience of parties and witnesses and promote the just and efficient conduct of such actions. 28 U.S.C. § 1407(a). As outlined in Plaintiff Sampayan's motion, all these factors have been met. The only matter on which Plaintiff Williams disagrees is the jurisdiction in which the Related Actions should be centralized.

---

[1] Three other actions were noted as "pending" on the Related Action list. They include two direct purchaser actions and one indirect purchaser action, filed in the Northern District of Ohio and the Southern District of New York.

### A. The Eastern District of Michigan is a prime location for automobile-related litigation.

Michigan is known as the "Auto Capital of the World."[2] "With a highly-skilled workforce, cutting-edge research and development facilities, and top-notch institutions of higher education, Detroit is home to the densest automotive and mobility supply chain in the world."[3] Indeed, the North American headquarters for two of the four tire groups (Continental and Pirelli) are located in Michigan,[4] and there are administrative offices for another (Bridgestone) in Michigan.[5]

This litigation, which involves alleged anticompetitive practices that artificially inflated the cost of replacement tires for automobiles, is particularly suited for handling in Detroit, in the Eastern District of Michigan.

There are five MDLs currently pending in the Eastern District of Michigan, and, not surprisingly, every one of them involve automobile-related litigation:

- *In re Automotive Parts Antitrust Litigation,* MDL No. 2311, Chief Judge Sean Cox;

- *In re FCA US LLC Monostable Electronic Gearshift Litigation,* MDL No. 2744, Senior District Judge David Lawson;

- *In re General Motors Air Conditioning Marketing and Sales Practices Litigation,* MDL No. 2818, District Judge Matthew Leitman;

- *In re Neo Wireless, LLC, Patent Litigation,* MDL No. 3034, District Judge Terrence Berg; and

---

[2] *See* Detroit Regional Chamber, Automotive & Mobility, https://www.detroitchamber.com/research/regional-overview/industries/automotive-mobility/.

[3] *Id.*

[4] *See* Continental (https://www.continental.com/en-us/career/our-locations/auburn-hills/); Pirelli Tire North America LLC (https://www.buzzfile.com/business/Pirelli-Tire-248-552-7508).

[5] *See* Bridgestone America, Inc., Original Equipment, U.S. & Canada Consumer Tire Sales Division (https://www.bridgestoneamericas.com/en/contact-us/locations/administrative-offices).

- *In re Chrysler Pacifica Fire Recall Products Liability Litigation,* MDL No. 3040, Senior District Judge David Lawson.[6]

The experience with multidistrict litigation that has been gained by the Eastern District of Michigan and Judge Berg, as noted above, weighs in favor of transferring the Related Cases to them. *See In re Aggrenox Antitrust Litig.,* 11 F. Supp. 3d 1342, 1343 (J.P.M.L. 2014) (considering the experience of the transferee judge and the district court in navigating "the nuances of complex and multidistrict litigation."). The fact that this experience was gained not only with automobile-related litigation, but with automobile-related *antitrust* litigation, adds even more weight.

**B.     Relative docket conditions favor transfer to the Eastern District of Michigan.**

The Panel considers relative docket conditions and favors districts having fewer pending multidistrict litigations. *See, e.g., In re Puerto Rican Cabotage Antitrust Litig.,* 571 F. Supp. 2d 1378, 1378 (J.P.N.L. 2008) (transferring to district with favorable docket conditions); *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. and Sales Practices Litig.,* 844 F. Supp. 2d 1380, 1381 (J.P.M.L. 2012) (transferring to district "presiding over fewer MDL dockets than other proposed districts"); *In re Baycol Prods. Liab. Litig.,* 180 F. Supp. 2d 1378, 1380 (J.P.M.L. 2001) (transferring to district court "not currently overtaxed with other multidistrict dockets").

The Eastern District of Michigan has more favorable docket conditions than the Southern District of New York. As of December 31, 2023, for example, the Eastern District of Michigan had about half the number of pending actions per judgeship, with 333, versus the 638 pending actions

---

[6] *See* MDL Statistics Report – Distribution of Pending MDL Dockets by District, Report Date 03/01/2024, at 2 (Michigan Eastern District), www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-March-1-2024.pdf.

4

per judgeship in the Southern District of New York.[7] Similarly, there were less than half the number of MDLs pending in the Eastern District of Michigan (five) versus the Southern District of New York (eleven).[8] Additionally, there was almost a tenfold difference between the two courts in the number of civil cases over three years old, with 397 in the Eastern District of Michigan versus 3,522 in the Southern District of New York.[9]

Docket conditions in the Eastern District of Michigan are likewise significantly more favorable than those in the Northern District of Ohio, which had 589 pending actions per judgeship and 3,158 civil cases over three years old, and the District of South Carolina, which had 1,143 pending actions per judgeship and 1,338 civil cases over three years old.[10]

Consequently, the Eastern District of Michigan has "the resources and the capacity to efficiently handle what could be a large litigation." *See In re Zantac (Ranitidine) Prods. Liab. Litig.,* 437 F. Supp. 3d 1368, 1370 (J.P.M.L. 2020); *see also In re DePuy Orthopedics, Inc., Pinnacle Hip Implant Prods. Liab. Litig.,* 787 F. Supp. 2d 1358, 1360 (J.P.M.L. 2011) (transferring to the court with "favorable docket conditions"). The Southern District of New York, on the other

---

[7] *See* United States District Court – Judicial Caseload Profile – 12-Month Period Ending Dec. 31, 2023, at 40 (Michigan Eastern Profile) and 11 (New York Southern Profile), www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2023_0.pdf.

[8] *See* MDL Statistics Report – Distribution of Pending MDL Dockets by District, Report Date 03/01/2024, at 2 (Michigan Eastern District) and 3 (New York Southern District), www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-March-1-2024.pdf.

[9] *See* United States District Court – Judicial Caseload Profile – 12-Month Period Ending Dec. 31, 2023, at 40 (Michigan Eastern Profile) and 11 (New York Southern Profile), www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2023_0.pdf.

[10] *Id.* at 42 (Ohio Northern District) and 24 (South Carolina District). They do, however, have fewer pending MDLs, with four in the Northern District of Ohio and two in the District of South Carolina. *See* MDL Statistics Report – Distribution of Pending MDL Dockets by District, Report Date 03/01/2024, at 3 (Ohio Northern District) and 4 (South Carolina District), www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-March-1-2024.pdf.

hand, has represented that its judges "preside[ ] over one of the highest civil caseloads in the country."[11]

### C. The Eastern District of Michigan is easily accessible.

The Panel also assesses the ease of access by the parties to the proposed transferee forum. *See, e.g., In re DePuy Orthopedics,* 787 F. Supp. 2d at 1360. There is no one central location for this litigation, as the parties are dispersed throughout the East Coast of the United States, Europe, and Japan. So, one location cannot be identified as better than any other based solely on mathematical calculations of mileage, although as noted above, at least three of the foreign defendants (Continental, Pirelli, and Bridgestone) could make use of their headquarters or administrative offices located in Michigan.[12]

Practicalities weigh in favor of transfer to the Eastern District of Michigan. Not only would three of the foreign defendants have the ability to use offices located in Michigan, but, as the Panel noted in another widespread litigation, "a litigation of this scope will benefit from centralization in a major metropolitan center that is well served by major airlines, provides ample hotel and office accommodations, and offers a well-developed support system for legal services." *See In re WorldCom, Inc., Sec. & ERISA Litig.,* 226 F. Supp. 2d 1352, 1355 (J.P.M.L. 2002).

The *Williams* action is pending in Detroit, in the Eastern District of Michigan. Detroit is a major metropolitan area with a population of over 4.3 million.[13] It is serviced by all four major

---

[11] *See* United States District Court, Southern District of New York, Judges of The Southern District of New York, https://www.nysd.uscourts.gov/judges#:~:text=Honorable%20Sarah%20Netburn,civil%20caseload%20in%20the%20country.

[12] *See infra* at 2.

[13] *See* Census Reporter, Census Data ACS 2022 for Detroit-Warren-Dearborn, MI Metro Area, https://censusreporter.org/profiles/31000US19820-detroit-warren-dearborn-mi-metro-area/.

airlines (American Airlines, Delta Air Lines, Southwest Airlines, United Airlines), among other airlines.[14] As of December 20, 2022, there were 4,957 hotel rooms in Downtown Detroit alone, with another 826 rooms under construction and set to open between 2022-2024.[15] Thus, the courthouse can be readily accessed by counsel and witnesses. The Panel recognized as much when transferring the *Neo Wireless* patent litigation to Judge Berg in the Eastern District of Michigan, stating that "Detroit, Michigan, is a convenient and easily accessible location." *In re Neo Wireless, LLC, Patent Litigation,* MDL No. 3034, Doc. 21 (J.P.M.L. June 14, 2022).

### III.  CONCLUSION

For the foregoing reasons, the Panel should centralize the Related Cases in the Eastern District of Michigan.

Dated: March 20, 2024

Respectfully Submitted,

By: *s/Michelle J. Looby*
Michelle J. Looby
**GUSTAFSON GLUEK PLLC**
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
mlooby@gustafsongluek.com

*Counsel for Kenneth Williams*
*E.D. Mich., 2:24-cv-10632*

---

[14] *See* https://www.flightsfrom.com/DTW.

[15] *See* Downtown Detroit Partnership, Number of Hotel Rooms Continues to Grow to Meet Demand, DDP Datascape Trends, https://downtowndetroit.org/news-insights/number-of-hotel-continue-growing-to-meet-demand/.