BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: PASSENGER VEHICLE REPLACEMENT TIRES ANTITRUST LITIGATION | MDL No. 3107 |

**DEFENDANT PIRELLI TIRE LLC'S RESPONSE TO
PLAINTIFF RENA SAMPAYAN'S MOTION TO TRANSFER**

Defendant Pirelli Tire LLC ("Pirelli") agrees with Plaintiff Rena Sampayan that consolidation and centralization of the Related Actions is appropriate given their common issues of fact and the efficiencies that consolidation will provide. Pirelli respectfully submits, however, that the Panel should consolidate the Related Actions in the Northern District of Ohio, rather than the Southern District of New York. The Northern District of Ohio is a more geographically centralized district than the Southern District of New York, especially considering the locations of the Defendants' places of business in the United States. Six of the 26 class action cases filed to date are already pending in the Northern District of Ohio. Three of those are already pending before Chief Judge Sara Lioi, who has substantial experience overseeing complex civil litigation since her appointment to the bench in 2007 but has never had the opportunity to preside over a multi-district litigation ("MDL"). The Northern District of Ohio is also less busy than the Southern District of New York, which means consolidation in the Northern District of Ohio will provide greater efficiencies and allow this case to proceed to trial in a more expeditious manner.

Consolidation of these actions in the Eastern District of Michigan or the District of South Carolina—the only other districts where cases are pending—would be inappropriate. There is only one Related Action pending in the Eastern District of Michigan (one of the last-filed cases), and it is assigned to Judge Terrence Berg, who already has an MDL. *See In re Neo Wireless, LLC Patent*

*Litig.*, MDL No. 3034.  There would be no efficiency gain in sending this case to a judge who is already presiding over an MDL or to another judge in the Eastern District of Michigan who is not even assigned one of the Related Actions.  The District of South Carolina is less centrally located than the Northern District of Ohio, is less convenient to travel to and from, and is one of the busiest judicial districts in the country on a per-judge basis.

For these reasons and as stated more fully herein, Pirelli requests that the Panel consolidate and centralize the Related Actions before Chief Judge Lioi in the Northern District of Ohio.

## BACKGROUND

**Locations of Tire Antitrust Related Actions Complaints.**  As of the date of this filing, Plaintiffs have filed 26 class action lawsuits against tire manufacturing companies, alleging antitrust violations.[1]  As shown below, Plaintiffs in the Related Actions have filed their 26 complaints in four judicial districts.

| District Court | Number of Complaints |
|---|---|
| Southern District of New York | 15 |
| Northern District of Ohio | 6 |
| District of South Carolina | 4 |
| Eastern District of Michigan | 1 |
| Total | 26 |

---

[1]  As of the time of this filing, only 20 cases have been designated as related on the MDL docket.  Pirelli understands that the following cases will also be eventually designated as Related Actions: (1) *Mai v. Continental Aktiengesellschaft et al.*, 1:24cv1984 (S.D.N.Y.), (2) *Slayman v. Continental Aktiengesellschaft et al.*, 1:24cv1930 (S.D.N.Y.), (3) *Price v. The Goodyear Tire & Rubber Company et al.*, 1:24cv1981 (S.D.N.Y.), (4) *Doherty v. Continental Aktiengesellschaft et al.*, 6:24cv1304 (D. S.C.), (5) *Alessi v. Continental Aktiengesellschaft et al.*, 6:24cv1305 (D. S.C.), and (6) *Carson et al. v. Continental Aktiengesellschaft et al.*, 5:24-cv-00475 (N.D. OH).

**Locations of U.S. Defendants.** The Defendants based in the United States have their principal place of business in the following locations[2]:

| Defendant | U.S. Headquarters or Principal Place of Business |
|---|---|
| Bridgestone America, Inc. | Nashville, Tennessee |
| Continental Tire the Americas, LLC | Fort Mill, South Carolina |
| GITI Tire (USA) Limited | Rancho Cucamonga, California |
| Goodyear Tire & Rubber Co. | Akron, Ohio |
| Hankook Tire America Corp. | Nashville, Tennessee |
| Kumho Tire U.S.A., Inc. | Atlanta, Georgia |
| Michelin North America, Inc. | Greenville, South Carolina |
| Nokian Tyres North America, Inc. | Nashville, Tennessee |
| Pirelli Tire LLC | Rome, Georgia |
| Sumitomo Rubber North America, Inc. | Rancho Cucamonga, California |
| Toyo Tire U.S.A. Corp. | Cypress, California |
| Yokohama Tire Corp. | Santa Ana, California |

The map below shows the Defendants' U.S. locations, with a concentration of Defendants in Sixth Circuit states (Ohio, Tennessee) and several more in the neighboring states of Georgia and South Carolina:

---

[2] The Defendant locations are taken from one of the Related Action complaints that names all U.S. defendants and identifies the location of their headquarters or principal places of business. *See* Complaint, *Curran et al. v. The Goodyear Tire & Rubber Co. et al.*, No. 1:24cv1419 (S.D.N.Y.), ECF No. 1, at 3-10.



**Plaintiff Locations.**  No district is home to a majority (or close to a majority) of the Plaintiffs. *See* Exhibit 1.[3]  Roughly one-third of the Plaintiffs live in or near the Great Lakes region.



---

[3]    The precise locations of the named Plaintiffs are not known because each complaint generally identifies that Plaintiff's (or Plaintiffs') state of residence.  The pins in the above figure are placed close to the geographic center of the states of residence.

**District Court Congestion.** The districts in which Related Actions are currently pending vary in terms of per-judge caseloads on an absolute and weighted basis. Data released by the Administrative Office of the U.S. Courts shows that the caseloads in the Southern District of New York and the District of South Carolina far exceed those of the Northern District of Ohio and the Eastern District of Michigan, which have similar caseloads on an absolute and weighted basis, as shown in the table below.[4]

| District | Number of Civil Filings Per Judge (rank out of 94 judicial districts) | Weighted Filings Per Judge (rank out of 94 judicial districts) |
|---|---|---|
| E.D. Mich. | 221 (67th) | 275 (80th) |
| N.D. Ohio | 230 (66th) | 317 (74th) |
| S.D.N.Y. | 417 (26th) | 535 (27th) |
| D. S.C. | 673 (10th) | 590 (21st) |

The Administrative Office of the U.S. Courts has also published data concerning the median time intervals from filing to disposition of civil cases by district. That data shows that the Northern District of Ohio is the fastest court, among the districts in which Related Actions are pending, in (a) resolving civil cases during pretrial proceedings, and (b) bringing civil cases to trial.[5]

---

[4] United States District Courts – National Judicial Case Profile, available at https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2023_0.pdf. "Weighted filings statistics account for the different amounts of time district judges require to resolve various types of civil and criminal actions." Explanation of Selected Terms, U.S. Courts, available at https://www.uscourts.gov/sites/default/files/explanation_of_selected_terms_december_2023.pdf.

[5] Table C-5—U.S. District Courts–Civil Statistical Tables For The Federal Judiciary (December 31, 2023), available at https://www.uscourts.gov/statistics/table/c-5/statistical-tables-federal-judiciary/2023/12/31.

| District | Median Time from Filing to Disposition, Cases Terminated During or After Pretrial (Months) | Median Time from Filing to Disposition, Cases Proceeding to Trial (Months) |
|---|---|---|
| N.D. Ohio | 11.8 | 24.4 |
| D. S.C. | 13.8 | 34.6 |
| S.D.N.Y. | 14.3 | 40.0 |
| E.D. Mich. | 15.8 | 37.0 |

**Geographic Distribution of MDLs.** None of the districts in which Related Actions are pending stick out as "underutilized" by the Panel. *See In re: Groupon, Inc., Mktg. & Sales Pracs. Litig.*, 787 F. Supp. 2d 1362, 1364 (J.P.M.L. 2011). For instance, the Southern District of New York (11 MDLs, 44 active and senior status judges) and the Northern District of Ohio (4 MDLs, and 18 active and senior status judges) have nearly identical MDL-per-judge ratios.[6] The Eastern District of Michigan (5 MDLs, 23 judges) and the District of South Carolina (2 MDLs, 14 judges) have comparable current MDL usage. However, a significant disparity exists with respect to historical usage, especially recently.[7]

| District | Number of MDLs Terminated in Last Five Years (2019 to 2024) |
|---|---|
| S.D.N.Y. | 15 |
| D. S.C. | 2 |
| N.D. Ohio | 1 |
| E.D. Mich. | 1 |

---

[6] U.S. Judicial Panel on Multidistrict Litigation, MDL Statistics Reports - Distribution of Pending MDL Dockets by District (Mar. 1, 2024), available at https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-March-1-2024.pdf.

[7] J.P.M.L., Multidistrict Litigations Terminated Through September 30, 2023, U.S. Courts, available at https://www.jpml.uscourts.gov/sites/jpml/files/JPML_Fiscal_Year_2023_Terminated_Litigations_Report_0.pdf.

**ARGUMENT**

I. **THE PANEL SHOULD GRANT THE PETITION FOR CENTRALIZATION UNDER § 1407**

Pirelli agrees with Plaintiff Sampayan that the Related Actions satisfy all three statutory requirements for centralization under 28 U.S.C. § 1407: (1) the cases "involv[e] one or more common questions of fact"; (2) transfer and consolidation will further "the convenience of parties and witnesses"; and (3) transfer and consolidation "will promote the just and efficient conduct of [the] actions." Therefore, § 1407 consolidation is appropriate.

II. **THESE RELATED ACTIONS SHOULD BE TRANSFERRED TO AND CONSOLIDATED IN THE NORTHERN DISTRICT OF OHIO**

Pirelli respectfully requests that the Panel transfer the Related Actions to the Northern District of Ohio, a district that has substantial ties to the parties in these actions and is centrally located, easily accessible, and convenient for all parties and their counsel.

Factors relevant to the Panel's decision on where to consolidate the Related Actions include: (1) the proximity of the transferee district to the conduct or events at issue, *see In re Dep't of Veterans Affairs (VA) Data Theft Litig.*, 461 F. Supp. 2d 1367, 1369 (J.P.M.L. 2006); (2) the location of the parties, witnesses, and documents, *see In re Aggrenox Antitrust Litig.*, 11 F. Supp. 3d 1342, 1343 (J.P.M.L. 2014); (3) the accessibility and convenience of the proposed transferee district to the parties and witnesses, *see In re Loestrin 24 Fe Antitrust Litig.*, 978 F. Supp. 2d 1371, 1372 (J.P.M.L. 2013); and (4) the experience and capacity of the transferee district, *see In re Motor Fuel Temperature Sales Practices Litig.*, 493 F. Supp. 2d 1365, 1367 (J.P.M.L. 2007). These factors all support centralization in the Northern District of Ohio.

A. **The Northern District of Ohio Is Centrally Located and a Convenient Venue**

The Panel often chooses to consolidate cases in a district that is geographically central and convenient. *See In re Pipe Flashing Pat. Litig.*, MDL No. 3093, 2024 WL 436483, *2 (J.P.M.L.

7

Jan. 30, 2024) (consolidating cases in the Northern District of Ohio because it is a convenient and accessible location for the geographically dispersed actions). The Northern District of Ohio fits this description. It is geographically central to the locations where the U.S. Defendants have their headquarters or major facilities (especially considering the locations of the Defendants who are named in all twenty-six Related Actions[8]). Additionally, one of the Defendants (Goodyear) is located in Akron.[9] Defendant Bridgestone also has a major facility in Akron.[10] The Panel has frequently consolidated multi-defendant antitrust cases in a judicial district where a defendant is located. *See In re Inclusive Access Course Materials Antitrust Litig.*, 482 F. Supp. 3d 1358, 1360 (J.P.M.L. 2020) (consolidating MDL in the Southern District of New York because one defendant was located there and others were located nearby); *In re Diisocyanates Antitrust Litig.*, 341 F. Supp. 3d 1376, 1378 (J.P.M.L. 2018) (choosing Western District of Pennsylvania as transferee district because "[o]ne defendant has its U.S. headquarters in this district, and five other defendants have their headquarters in adjacent or nearby districts"); *In re Local TV Advert. Antitrust Litig.*, 338 F. Supp. 3d 1341, 1343 (J.P.M.L. 2018) ("Tribune Media, which is sued in all actions, has its headquarters in this district, and thus common evidence is likely located there.").

The Northern District of Ohio is also a convenient location for the concentration of named Plaintiffs located in or near the Great Lakes region, which comprises approximately one-third of all named Plaintiffs. There is no larger concentration of Plaintiffs located in any other geographic region. And because of its relative geographic centrality, the Northern District of Ohio is, on

---

[8]   The Defendants located in California are named in only three of the Related Actions.

[9]   The only other location where a Related Action is pending and at least one Defendant is located is Greenville, South Carolina, which is not an appropriate venue for the reasons discussed *infra* Section II.E.

[10]  *See* Research & Innovation, Bridgestone, available at https://www.bridgestoneamericas.com/en/contact-us/locations/research-innovation#.

balance, more convenient than other districts for the remainder of named Plaintiffs scattered throughout the rest of the country.

> **B. Considerations of Court Congestion and Efficiency Favor the Northern District of Ohio Over Other Districts**

The Panel routinely considers favorable (uncongested) docket conditions as a factor in determining the venue for centralization. *See In re Webvention LLC ('294) Patent Litig.*, 831 F. Supp. 2d 1366, 1367 (J.P.M.L. 2011) ("The relative docket conditions in the District of Maryland are more favorable than the other proposed transferee forums."); *In re Bank of Am. Wage & Hour Empl. Practices Litig.*, 706 F. Supp. 2d 1369, 1371-72 (J.P.M.L. 2010) (finding that the transferee district had "docket conditions that are significantly more favorable than the other primary contenders for this litigation."); *In re ClassicStar Mare Lease Litig.*, 528 F. Supp. 2d 1345, 1347 (J.P.M.L. 2007) (transferring actions to Eastern District of Kentucky because "the general docket conditions permit us to make the Section 1407 assignment knowing that the court has the resources available to manage this litigation").

Current docket conditions support transfer to the Northern District of Ohio. It has fewer civil filings per judge than the Southern District of New York and the District of South Carolina, measured both in absolute and weighted terms. *See* National Judicial Case Profile, *supra* note 3. The Northern District of Ohio has very similar per-judge caseloads as the Eastern District of Michigan, but data from the Administrative Office of the U.S. Courts reflects that the Northern District of Ohio is faster at resolving civil cases prior to trial and in bringing civil cases to trial. *See* Table C-5, *supra* note 4. In fact, the Northern District of Ohio is faster by these measures than all the other districts in which a Related Action is pending. *See id.* Consolidation in the Northern District of Ohio would allow the parties to take advantage of the district's relatively light caseload and its ability to steer civil litigation to trial in an expeditious manner.

Furthermore, consolidation in the Northern District of Ohio would permit the Panel to assign this matter to Chief Judge Lioi, "an experienced jurist who has not yet had the opportunity to preside over an MDL." *In re Chantix (Varenicline) Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 648 F. Supp. 3d 1381, 1382 (J.P.M.L. 2022); *In re Int. Rate Swaps Antitrust Litig.*, 190 F. Supp. 3d 1364, 1366 (J.P.M.L. 2016) (same). Chief Judge Lioi is already presiding over several of the Related Actions, and it is likely that all of the Northern District of Ohio cases will eventually be transferred to her under Northern District of Ohio Local Rule 3.1(b)(3), just as several Related Actions already have been.[11] Chief Judge Lioi was appointed to the federal bench in 2007, was a state-level judge for ten years before that, and has significant experience overseeing class action litigation.[12] Consolidation of the Related Actions in the Northern District of Ohio before Chief Judge Lioi will certainly ensure that this matter goes before a jurist who "will steer this litigation on a prudent and expeditious course." *In re RealPage, Inc., Rental Software Antitrust Litig.*, 669 F. Supp. 3d 1372, 1373 (J.P.M.L. 2023).

---

[11] Chief Judge Lioi was assigned the first-filed case in the Northern District of Ohio. *See Bengel v. Continental Aktiengesellschaft et al.*, 5:24cv363 (N.D. Ohio), Text Entry (Feb. 27, 2024). Although subsequent cases were originally randomly assigned to other judges, several of those have since been transferred to Chief Judge Lioi's docket. *See Stephan v. Continental Aktiengesellschaft et al.*, 5:24cv408 (N.D. Ohio), ECF No. 5; *Shumate v. Goodyear Tire & Rubber Co. et al.*, 5:24cv449 (N.D. Ohio), ECF No. 3. Presumably, the others will be as well under Northern District of Ohio Local Rule 3.1(b)(3).

[12] *See, e.g.*, *Johnson v. Centor, Inc.*, No. 5:19-CV-2622, 2021 WL 5140966, (N.D. Ohio Nov. 4, 2021); *Savanich v. Nat. Essentials, Inc.*, No. 5:20-CV-2088, 2021 WL 5416724 (N.D. Ohio Nov. 19, 2021); *Todd S. Elwert, Inc., DC v. All. Healthcare Servs., Inc.*, No. 3:15-CV-2673, 2018 WL 4539287 (N.D. Ohio Sept. 21, 2018); *Phillips v. Philip Morris Cos. Inc.*, 298 F.R.D. 355 (N.D. Ohio 2014); *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09-CV-1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010); *Huntsman v. Akron Tower Hous. P'ship*, No. 1:05-CV-1739, 2007 WL 1464563 (N.D. Ohio May 17, 2007).

### C. Certain Factors Cited by Plaintiff Sampayan Do Not Weigh in Favor of Consolidation in the Southern District of New York

Several of Plaintiff Sampayan's arguments for consolidation in the Southern District of New York are unpersuasive. First, Sampayan points to the fact that the first-filed Related Action was filed in the Southern District of New York. While the Panel has sometimes given this factor weight, it usually does so when the first-filed action is farther advanced than others and that "head start" creates efficiencies for the parties. *See, e.g.*, *In re Broiler Chicken Grower Antitrust Litig.*, 509 F. Supp. 3d 1359, 1362 (J.P.M.L. 2020) (consolidating litigation in the Eastern District of Oklahoma because only the first-filed action in that district had advanced past the pleadings stage). The decision on where to consolidate an MDL is not a simple race to the courthouse. *See In re Halftone Color Separations ('809) Pat. Litig.*, 547 F. Supp. 2d 1383, 1384-85 (J.P.M.L. 2008) (consolidating litigation in the Central District of California despite the first-filed action being in the Eastern District of Texas). Here, no action is farther ahead than any other. No Defendant has even answered a complaint in any Related Action. Because all the Related Actions are in the very early stages of the proceedings, there is nothing to be gained from choosing the district of the first-filed action for that reason alone. The Panel should not view this factor as dispositive, or even significant, in this case. *See, e.g.*, *id*.

Second, Sampayan notes that the majority of the Related Actions are pending in the Southern District of New York. Memorandum in Support of Plaintiff Sampayan's Motion to Transfer (hereinafter "Pl.'s Memo.") at 9. The strength of that majority has shrunk since Sampayan filed the Petition, however. Today, six of the 26 class action cases are pending in the Northern District of Ohio, compared to just one of 14 when Sampayan moved for consolidation. Furthermore, the Panel does not simply select the district with the most actions filed. *See, e.g.*, *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 269 F. Supp. 2d 1372, 1373-74 (J.P.M.L.

11

2003) (consolidating cases in the District of Maine, despite six out of ten cases pending in the Eastern District of New York); *In re Perry Johnson & Assocs. Med. Transcription Data Sec. Breach Litig.*, No. MDL 3096, 2024 WL 436485, *3 (J.P.M.L. Jan. 30, 2024) (assigning consolidation to the Eastern District of New York despite more actions pending in the District of Nevada). Were it so, class action plaintiffs could always manufacture venue wherever they wanted by filing duplicative actions in a single district. Instead of performing a simple counting exercise, the Panel must choose the district that "will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). For the reasons stated herein, that district is the Northern District of Ohio.

Third, Sampayan claims that the Southern District of New York is a more efficient district than the Northern District of Ohio, citing its median time from filing to disposition of 5.6 months in civil cases (versus 8.2 months for the Northern District of Ohio). *See* Pl.'s Memo. at 10 n.6. This appears to reflect that the Southern District of New York has a large volume of cases that are disposed with quickly. The same source to which Sampayan cites shows that the Northern District of Ohio has fewer civil filings per judge and fewer weighted filings per judge. *See* National Judicial Case Profile, *supra* note 3. When it comes to cases that proceed to trial, the Northern District of Ohio (median time of 24.4 months from filing to disposition) is more efficient than the Southern District of New York (median time of 40.0 months). *See* Table C-5, *supra* note 4.

Fourth, and finally, Sampayan argues that the Panel should send this antitrust MDL to the Southern District of New York because the Panel has sent other antitrust MDLs to that district. Pl.'s Memo. at 10 n.7. But the Panel does not reflexively send MDLs to "experienced" districts when other, less-utilized districts have "the resources and the capacity to efficiently handle what may be a large and complex litigation." *In re Jan. 2021 Short Squeeze Trading Litig.*, MDL No. 2989, 2021 WL 1258399, at *3 (J.P.M.L. Apr. 2, 2021) (consolidating cases in Southern District

12

of Florida, where plaintiffs sought consolidation in Northern District of California—one of the most heavily-used districts for MDLs). The Northern District of Ohio and the Southern District of New York currently have a roughly equal number of MDLs on a per-judge basis. *See* MDL Statistics Reports – Distribution of Pending MDL Dockets by District, *supra* note 5. But the Southern District of New York has recently been selected far more often than the Northern District of Ohio on a per-judge basis. In the last five years (2019 to 2024), *fifteen* MDLs based in the Southern District of New York have been terminated, against only *one* such MDL based in the Northern District of Ohio in the same period. *See* Multidistrict Litigations Terminated Through September 30, 2023, *supra* note 6. (And yet, the Southern District of New York still has 11 pending[13].) Given all the factors that weigh in favor of consolidation in the Northern District of Ohio, there is no reason for the Panel to select a district to which it has historically assigned MDLs far more frequently.

        **D.**      **The Eastern District of Michigan Is Not a Suitable Venue for Consolidation**

The Panel should not consolidate the Related Actions in the Eastern District of Michigan, where just one case is pending. *See Williams v. Continental Aktiengesellschaft et al.*, 2:24cv10632 (E.D. Mich.). Importantly, the jurist assigned to *Williams*, Judge Berg, is already presiding over the MDL *In re Neo Wireless, LLC Patent Litigation*, MDL No. 3034. It is rare for the Panel to assign the same judge multiple MDLs,[14] and the Panel often finds it appropriate to instead assign an MDL to experienced jurists who have never presided over an MDL before. *See In re Clearview AI, Inc., Consumer Priv. Litig.*, 509 F. Supp. 3d 1368, 1369-70 (J.P.M.L. 2020); *In re: TD Bank, N.A., Debit Card Overdraft Fee Litig.*, 96 F. Supp. 3d 1378, 1379 (J.P.M.L. 2015). These factors

---

[13]    MDL Statistics Reports - Distribution of Pending MDL Dockets by District, *supra*, note 5.

[14]    *Id.* (showing that 169 currently pending MDL dockets are assigned to 143 judges).

should carry substantial weight in the instant case because the desirability of the Northern District of Ohio, and Chief Judge Lioi's significant experience in handling complex matters despite never having overseen an MDL, make it simply unnecessary to burden Judge Berg with a second MDL.

Docket speeds also weigh against choosing the Eastern District of Michigan. According to data released by the Administrative Office of the United States Courts, as of December 31, 2023, the Northern District of Ohio is noticeably faster than the Eastern District of Michigan at resolving civil cases during pretrial (11.8 months versus 15.8 months on average) and at bringing civil cases to trial (24.4 months versus 37.0 months on average). *See* Table C-5, *supra* note 4. The Northern District of Ohio is a superior choice to ensure this case proceeds efficiently.

### E. The Panel Should Not Consolidate the Related Actions in the District of South Carolina

The District of South Carolina is also not an appropriate venue for this MDL. Significantly, the District of South Carolina has become among the busiest judicial districts, with one of the highest caseloads per judge in the country. According to data released by the Administrative Office of the United States Courts, there were 1,143 pending cases per judge in the District of South Carolina—the ninth-highest rate in the country—as of December 31, 2023. *See* National Judicial Case Profile, *supra* note 3. This district is also in the top ten in new civil filings per judge. *See id.* And the District of South Carolina is 21st in the country in "weighted filings," a metric that accounts for the complexity of filed cases. *See id.* In all these measures, the Northern District of Ohio ranks far more favorably, *see id.*, making it a more appealing option to preside over pre-trial proceedings. Given current caseloads and historical trends, it is likely that the Northern District of Ohio will more quickly and more efficiently steer this case to trial in a timely manner. There is no reason for the Panel to overburden an already busy district with this MDL when the Northern District of Ohio is a more appropriate option for consolidation.

The District of South Carolina is also the least convenient, among all the locations in which a Related Action is pending, for parties, witnesses, and lawyers who must travel to the courthouse. The two Related Actions pending in South Carolina were filed in Greenville. Greenville has its own small airport (Greenville-Spartanburg International Airport ("GSP")) but is approximately two hours away by car from major airports in Charlotte and Georgia. GSP has a limited number of flights each day (and nearly half of them originate from Atlanta or Charlotte).[15] Akron—where the Northern District of Ohio cases are pending—is serviced by both the Akron-Canton Airport (a smaller airport like GSP) *and* a major airport, Cleveland Hopkins International Airport, which is only about a 40-minute drive to the federal courthouse in Akron.

## CONCLUSION

For the reasons set forth above, Pirelli respectfully requests that the Panel transfer the Related Actions to the Northern District of Ohio pursuant to 28 U.S.C. § 1407.

Dated: March 20, 2024

Respectfully submitted,

*/s/ J. Mark Gidley*

J. Mark Gidley
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005
Tel.: (202) 626-3600
Fax: (202) 639-9355
mgidley@whitecase.com

*Counsel for Defendant Pirelli Tire LLC*

---

[15] Greenville-Spartanburg Int'l Airport Flight Status, GSP Airport, available at https://gspairport.com/flight-status/ (last visited March 20, 2024).