BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| **IN RE: PASSENGER VEHICLE REPLACEMENT TIRES ANTITRUST LITIGATION** | MDL No. 3107 |

*VALENZANO* AND *GIANNE* PLAINTIFFS' RESPONSE
TO PLAINTIFF SAMPAYAN'S MOTION TO TRANSFER

Plaintiffs in *Valenzano v. Continental Aktiengesellschaft et al.*, No. 6:24-cv-00948 (D.S.C.), and *Gianne et al. v. Continental Aktiengesellschaft et al.*, No. 5:24-cv-00431 (N.D. Ohio), respectfully submit this response to Plaintiff Sampayan's ("Movant's") Motion to Transfer Related Actions for Consolidated or Coordinated Pretrial Proceedings, ECF No. 1. The *Valenzano* and *Gianne* Plaintiffs agree that centralization and transfer are appropriate. But centralization should not be in the Southern District of New York, which has no connection to this litigation. Rather, the most appropriate transferee district is the District of South Carolina, which is centrally located and home to the U.S. headquarters of two of the six multinational tire manufacturers named in all the Related Actions. In the alternative, centralization would also be appropriate in the Northern District of Ohio, where one manufacturer is headquartered.

I.  **BACKGROUND**

As explained in Movant's Memorandum in Support, this litigation comprises several factually and legally overlapping class actions regarding an alleged conspiracy by Defendants to fix the prices of passenger vehicle replacement tires in the United States. ECF No. 1-1 ("Mem.") at 1-4. These "Related Actions" are brought on behalf of direct or indirect purchasers of tires in the United States from January 1, 2020, until Defendants' anticompetitive conduct ceased, and assert claims under federal antitrust and (in some cases) state antitrust and consumer protection laws. *Id.* at 4. There are now 23 Related Actions before the Panel (up from 14 when the Motion to Transfer was filed), with 12 pending in the Southern District of New York, 5 in the District of South Carolina, 5 in the Northern District of Ohio, and 1 in the Eastern District of Michigan.

Defendants are multinational tire manufacturing companies alleged to have participated in the price-fixing conspiracy. On January 30, 2024, the European Commission ("EC"), in collaboration with national competition authorities from European Union ("EU") member states,

1

carried out unannounced dawn raids on the premises of several tire companies.[1] The EC stated that the inspections concerned potential violations of EU antitrust rules and potential price coordination among the target companies with respect to new replacement tires for passenger cars, vans, trucks, and buses sold in the European Economic Area.[2]

Six multinational tire manufacturers have confirmed they were targets of the raids: Bridgestone, Continental, Goodyear, Michelin, Nokian, and Pirelli.[3] These manufacturers (the "Common Defendant Manufacturers") are named in all the Related Actions, and in nearly all the Related Actions, they are the *only* manufacturers who are named.[4] Of these, just three—Goodyear (26%), Michelin (21%), and Bridgestone (18%)—control nearly two-thirds of the United States replacement tire market, with the rest accounted for by Continental, Nokian, Pirelli, and others.[5]

All six Common Defendant Manufacturers have a substantial United States presence. Goodyear is based in the U.S., and while the others are based abroad, each has a U.S. headquarters and a U.S. subsidiary that is named in all the Related Actions. Two manufacturers (Michelin and Continental) have their U.S. headquarters in the District of South Carolina, with one each

---

[1] *Valenzano v. Continental Aktiengesellschaft et al.*, No. 6:24-cv-00948 (D.S.C.), Compl. ¶ 2, ECF No. 1 ("*Valenzano* Compl."); *Gianne et al. v. Continental Aktiengesellschaft et al.*, No. 5:24-cv-00431 (N.D. Ohio), Compl. ¶ 2 ("*Gianne* Compl.").

[2] *Valenzano* Compl. ¶ 2; *Gianne* Compl. ¶ 2.

[3] *Valenzano* Compl. ¶ 74; *Gianne* Compl. ¶ 75.

[4] Of the actions currently before the Panel, two outliers name several additional tire manufacturers, none of whom to date have been connected to the raids. *See Curran et al. v. The Goodyear Tire & Rubber Company et al.*, No. 1:24-cv-01419 (S.D.N.Y.); *Shumate v. Goodyear Tire & Rubber Company, Inc. et al.*, No. 5:24-cv-00449 (N.D. Ohio).

[5] *Valenzano* Compl. ¶¶ 76-78; *Gianne* Compl. ¶¶ 77-79 (market shares as of 2022).

headquartered in the Northern District of Ohio (Goodyear), Middle District of Tennessee (Bridgestone), Eastern District of Tennessee (Nokian), and Northern District of Georgia (Pirelli):

**Common Defendant Manufacturers**[6]

| Manufacturer | Defendant | Principal Place of Business | District of U.S. Headquarters |
|---|---|---|---|
| **Bridgestone** | Bridgestone Corporation | Japan | **M.D. Tennessee** |
| | Bridgestone Americas, Inc. | Nashville, Tennessee | |
| **Continental** | Continental AG | Germany | **South Carolina** |
| | Continental Tire the Americas, LLC | Fort Mill, South Carolina[7] | |
| **Goodyear** | The Goodyear Tire & Rubber Company | Akron, Ohio | **N.D. Ohio** |
| **Michelin** | Compagnie Générale des Établissements Michelin SCA | France | **South Carolina** |
| | Michelin North America, Inc. | Greenville, South Carolina[8] | |
| **Nokian** | Nokian Tyres plc | Finland | **E.D. Tennessee** |
| | Nokian Tyres Inc | Dayton, Tennessee | |
| | Nokian Tyres U.S. Operations LLC | Dayton, Tennessee | |
| **Pirelli** | Pirelli & C. S.p.A. | Italy | **N.D. Georgia** |
| | Pirelli Tire LLC | Rome, Georgia | |

---

[6] *See Valenzano* Compl. ¶¶ 7-15; *Gianne* Compl. ¶¶ 8-16.

[7] https://www.continental-tires.com/us/en/legal-pages/imprint/; https://www.continental.com/en-us/career/our-locations/fort-mill/ (Fort Mill is Continental's U.S. "tire headquarters").

[8] https://jobs.michelinman.com/recruitment-sites/greenville-sc-hna.

3

## II. ARGUMENT

### A. The Related Actions Should Be Centralized in the District of South Carolina.

The *Valenzano* and *Gianne* Plaintiffs agree with Movant that centralization is appropriate given that the Related Actions involve largely overlapping factual allegations and legal claims. *See* Mem. at 5-8. The parties differ, however, as to the appropriate transferee district.

Whereas Movant's preferred forum, the Southern District of New York, has no connection to this litigation, the District of South Carolina is a major U.S. tire manufacturing center and home to the U.S. headquarters of two of the six Common Defendant Manufacturers (Michelin and Continental). In fact, Michelin's headquarters is in the very same city where the South Carolina actions are pending: Greenville.[9] *Cf. In re Hydrogen Peroxide Antitrust Litig.*, 374 F. Supp. 2d 1345, 1346 (J.P.M.L. 2005) (selecting district in part due to "the presence of two of the largest domestic producers of hydrogen peroxide—both of which are named as defendants—within blocks of the federal courthouse").

The District of South Carolina is also more centrally located, being geographically proximate to the U.S. headquarters of Bridgestone (Nashville, Tennessee), Nokian (Dayton, Tennessee), and Pirelli (Rome, Georgia) and approximately equidistant from Goodyear's headquarters (Akron, Ohio) as the Southern District of New York. And despite Movant's suggestion that the Southern District of New York is uniquely situated to handle litigation involving European parties, in truth, Greenville is served by major airlines with daily nonstop

---

[9] The five Related Actions pending in the District of South Carolina—which include both direct and indirect purchaser actions—have been assigned to the Hon. Jacquelyn D. Austin, who sits in Greenville. The *Valenzano* and *Gianne* Plaintiffs understand that any future related actions filed in the district would be assigned to her as well.

4

flights to hubs throughout the country and thus easily accessible to foreign travelers.[10] France-based Michelin itself touts Greenville's convenience, telling prospective employees that its U.S. headquarters "lies directly between Atlanta and Charlotte near the Greenville-Spartanburg International Airport."[11] Perhaps most telling is the very fact that two of the Common Defendant Manufacturers have chosen to locate their U.S. headquarters in the District of South Carolina (not to mention the others who have done so in neighboring Southern districts). If the district is convenient enough for these foreign-based companies to do business in, it stands to reason that it is convenient enough for them to litigate in.

The presence of two of the six Common Defendant Manufacturers' U.S. headquarters and the district's geographic centrality are in themselves sufficient reasons to centralize in the District of South Carolina. *See In re Diisocyanates Antitrust Litig.*, 341 F. Supp. 3d 1376, 1378 (J.P.M.L. 2018) (selecting district because "[o]ne defendant has its U.S. headquarters in this district, and five other defendants have their headquarters in adjacent or nearby districts. Relevant documents and witnesses therefore are likely to be located in or close to this area."); *In re: Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 949 F. Supp. 2d 1365, 1366 (J.P.M.L. 2013) (selecting district in part because it "presents a central location between the principal places of business for the three [defendant] entities located in the United States"); *In re Chocolate Confectionary Antitrust Litig.*, 542 F. Supp. 2d 1376, 1377 (J.P.M.L. 2008) (selecting district because one defendant's headquarters was located there and "several of the defendants maintain a presence in or near that district"); *In re Auto. Refinishing Paint Antitrust Litig.*, 177 F. Supp. 2d 1378, 1379 (J.P.M.L. 2001) (selecting Eastern District of Pennsylvania in part because "a number

---

[10] https://gspairport.com/where-we-fly/.

[11] https://jobs.michelinman.com/recruitment-sites/greenville-sc-hna.

of the defendants have a nexus in the Northeastern United States"). But additional factors also support centralization there.

First, the District of Southern Carolina is a relatively underutilized transferee district, with only two pending MDL dockets, as compared to eleven in the Southern District of New York. *See In re Kia Hyundai Vehicle Theft Litig.*, 648 F. Supp. 3d 1374, 1375-76 (J.P.M.L. 2022) (selecting "a relatively underutilized transferee district with only four pending MDL dockets"); *In re Am. Honda Motor Co., Inc., CR-V Vibration Mktg. & Sales Pracs. Litig.*, 140 F. Supp. 3d 1336, 1337 n.5 (J.P.M.L. 2015) ("We observe that the Southern District of Ohio presently has just two MDLs, whereas the Central District of California has twelve."); *In re: Skelaxin (Metaxalone) Antitrust Litig.*, 856 F. Supp. 2d 1350, 1352 (J.P.M.L. 2012) (selecting district where only one other MDL pending). Centralization in the District of South Carolina would thus help "spread the burden . . . among districts" of the large number of MDLs nationwide. *In re: Digitek Prod. Liab. Litig.*, 571 F. Supp. 2d 1376, 1377 (J.P.M.L. 2008).

Second, the Hon. Jacquelyn D. Austin, who has been assigned the Related Actions filed in the District of South Carolina, is a skilled jurist "who has not yet had the opportunity to preside over an MDL." *In re Gardasil Prod. Liab. Litig.*, 619 F. Supp. 3d 1356, 1358 (J.P.M.L. 2022). While Judge Austin's service as a federal district judge began only earlier this year, she previously served for 13 years as a federal magistrate judge—experience that would serve her well in navigating the complex discovery issues that arise in litigation such as this.

Finally, apart from Judge Austin, there are many other skilled jurists in the district who could capably manage this litigation. Movant's argument (Mem. at 10) that the Southern District of New York's experience with antitrust cases makes it "somehow better qualified than any other district to supervise pretrial in this litigation is wholly without merit." *In re Tenneco Inc. Sec.*

*Litig.*, 426 F. Supp. 1187, 1189 (J.P.M.L. 1977) (rejecting argument that District of Columbia was superior forum because "it already has processed many SEC actions involving allegations similar to those raised in this litigation, and has more expertise in handling actions with significant national and international ramifications than any other district court").

Centrally located and having a strong nexus to the Common Manufacturing Defendants, the District of South Carolina is the most appropriate transferee district. The *Valenzano* and *Gianne* Plaintiffs respectfully submit that this litigation should be centralized there.

**B. In the Alternative, the Related Actions Should Be Centralized in the Northern District of Ohio.**

While the District of South Carolina is the most appropriate forum, the Northern District of Ohio would be a suitable alternative. Several Related Actions are pending there, and Goodyear is located there. Though not as centrally located as the District of South Carolina, the Northern District of Ohio does at least have one Common Defendant Manufacturer's headquarters, which gives it a stronger nexus to this litigation than the Southern District of New York. And the district is also underutilized, with only four pending MDLs. Thus, should the Panel decide not to centralize in the District of South Carolina, it should do so in the Northern District of Ohio.

**C. The Southern District of New York Is Not the Most Appropriate Forum.**

This litigation should not be centralized in the Southern District of New York for the simple reason that that district "has no special connection to either the parties or the litigation's subject matter." *In re Halftone Color Separations ('809) Pat. Litig.*, 547 F. Supp. 2d 1383, 1385 (J.P.M.L. 2008); *see also In re Toilet Seat Antitrust Litig.*, 387 F. Supp. 1342, 1344, n.2 (J.P.M.L. 1975) (rejecting district that had "no connection with this litigation"). None of the Defendants are headquartered in New York, and thus it is unlikely that relevant witnesses or documents would be located there. Movant notes that Michelin North America, Inc., is incorporated in New York

7

(Mem. at 9), but that fact is doubly unhelpful to them. First, a company's place of incorporation says nothing about the location of its documents and witnesses, which are far more likely to be found at the company's headquarters. *See, e.g.*, *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 410 F. Supp. 3d 1357, 1360 (J.P.M.L. 2019) ("Several defendants . . . are headquartered in [the transferee] district, and relevant documents and witnesses likely will be found there."). More to the point, in Michelin North America's case, that headquarters is in the *District of South Carolina*.[12]

Movant's case for the Southern District of New York boils down to the fact that the bare majority of cases (so far) have been filed in the district and the claim that New York is most convenient for the parties and witnesses. The first point is of little moment; the second is dubious. Not only are there nearly as many cases pending outside the Southern District of New York as in it, but given that the first Related Action was just filed in February 2024, "none of the cases has advanced so far since their filing as to give any particular district unique insight or knowledge of this controversy," *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 148 F. Supp. 3d 1367, 1369 (J.P.M.L. 2015) (cleaned up).

With respect to New York's supposed convenience, as discussed above, it is actually the District of South Carolina that is the more geographically central forum. And any marginal advantage New York may have in accessibility to Europe is undercut by the inconvenient fact that the European Common Defendant Manufacturers have chosen to headquarter their U.S. operations in the South—including two in the District of South Carolina. Moreover, any such advantage is ultimately outweighed by the likely presence of relevant document and witnesses in the District of South Carolina and neighboring districts, in contradistinction to the likely absence thereof in the

---

[12] *See Valenzano* Compl. ¶ 8; *Gianne* Compl. ¶ 9.

Southern District of New York. *See In re Oil Spill by "Amoco Cadiz" Off Coast of France on Mar. 16, 1978*, 471 F. Supp. 473, 478 (J.P.M.L. 1979) (rejecting Southern District of New York as transferee forum even though it was allegedly "more accessible to the foreign parties in this litigation" because, among other things, "[m]any documents and witnesses" were located in competing forum).

### III.   CONCLUSION

For the foregoing reasons, the *Valenzano* and *Gianne* Plaintiffs respectfully request that the Panel centralize the Related Actions before the Hon. Jacquelyn D. Austin of the District of South Carolina or another judge in that district. In the alternative, the *Valenzano* and *Gianne* Plaintiffs request centralization in the Northern District of Ohio.

Dated: March 20, 2024                                  Respectfully submitted,

                                                                               /s/ Edward M. Grauman

                                                                               Edward M. Grauman
                                                                               **BATHAEE DUNNE LLP**
                                                                               901 South MoPac Expressway
                                                                               Barton Oaks Plaza I, Suite 300
                                                                               Austin, TX 78746
                                                                               egrauman@bathaeedunne.com
                                                                               Tel.: (512) 575-8848

                                                                               *Counsel for* Valenzano *and* Gianne *Plaintiffs*