**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: PASSENGER VEHICLE REPLACEMENT TIRES ANTITRUST LITIGATION | MDL No. 3107 |

**SDNY PLAINTIFFS' JOINT RESPONSE IN SUPPORT OF PLAINTIFF SAMPAYAN'S MOTION FOR TRANSFER OF ACTIONS TO THE SOUTHERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PROCEEDINGS**

SDNY Plaintiffs,[1] ten direct and indirect purchasers who brought cases[2] individually and on behalf of similarly situated classes against Defendants,[3] respectfully submit, pursuant to JPML Rule 6.2(e), this joint response in support of Plaintiff Rena Sampayan's Motion to Transfer and Centralize Related Actions for Consolidated or Coordinated Pretrial Proceedings

---

[1] "SDNY Plaintiffs" are the direct and indirect purchasers in eight related actions filed in the Southern District of New York prior to Plaintiff Rena Sampayan's Transfer Motion: Catip Islami, Wilkerson Farms ET, LLC, James Alford, Michele Edwards, Marco A. Torres, Susan Davidov, Robert Furst, Michael Curran, Timothy Borland, and Michael Spadafino.

[2] The cases filed by SDNY Plaintiffs are: *Islami v. Continental Aktiengesellschaft, et al.*, Case No. 24-cv-00967; *Wilkerson Farms ET, LLC v. Continental Aktiengesellschaft, et al.,* Case No. 24-cv-00970; *Alford v. Bridgestone Corporation, et al.*, Case No. 24-cv-01038; *Edwards v. Continental Aktiengesellschaft, et al.,* Case No. 24-cv-01092; *Torres v. Continental Aktiengesellschaft, et al.,* Case No. 24-cv-01124; *Davidov, et al. v. Continental Aktiengesellschaft, et al.*, Case No. 24-cv-01367; *Curran, et al. v. Continental Aktiengesellschaft, et al.*, Case No. 24-cv-01419; and *Spadafino v. Continental Aktiengesellschaft, et al.*, Case No. 24-cv-01452.

[3] "Defendants" are Continental Aktiengesellschaft; Continental Tire The Americas, LLC; Compagnie Générale Des Établissements Michelin SCA; Compagnie Financière Michelin SA; Michelin North America, Inc.; Nokian Tyres Plc; Nokian Tyres Inc.; Nokian Tyres U.S. Operations LLC; Nokian Tyres North America, Inc., The Goodyear Tire & Rubber Company; Pirelli & C. S.p.A.; Pirelli Tire LLC; Bridgestone Corporation; Bridgestone Americas, Inc., Hankook Tire & Technology Co., Ltd.; Hankook Tire America Corp.; Yokohama Rubber Co., Ltd.; Yokohama Tire Corporation; Toyo Tire Corporation; Toyo Tire U.S.A. Corp.; Kumho Tire Co.; Sumitomo Rubber Industries, Ltd.; Sumitomo Rubber North America, Inc.; Giti Tire Global Trading Pte. Ltd.; and Giti Tire (USA) Ltd.

("Transfer Motion") ("ECF No. 1"). For the reasons set forth herein, SDNY Plaintiffs request that the Panel transfer all related actions to the Southern District of New York ("SDNY").

## BACKGROUND

On January 30, 2024, the European Commission ("EC") announced that it conducted dawn raids on several of Defendants' corporate offices as part of an investigation into a suspected price-fixing conspiracy.[4] Following the announcement of the EC investigation, numerous litigants commenced private antitrust actions largely based on the same set of core facts. There are fourteen actions listed on the Schedule of Related Actions[5] ("Related Actions"), ECF No. 1-2, which were filed in three judicial districts – SDNY, the District of South Carolina ("D.S.C."), and the Northern District of Ohio ("N.D. Ohio"). Since that time, an additional thirteen actions[6] ("Tag-Along Actions") have been filed in SDNY, D.S.C., N.D. Ohio, and

---

[4] European Commission Press Release, Commission carries out unannounced antitrust inspection in the tyres sector (Jan. 30, 2024), https://ec.europa.eu/commission/presscorner/detail/en/ip_24_561.

[5] In addition to the actions filed by the SDNY Plaintiffs, the "Related Actions" are: *Sampayan v. Continental Aktiengesellschaft, et al.,* Case No. 24-cv-00881 (S.D.N.Y); *Novak v. Continental Aktiengesellschaft, et al.,* Case No. 24-cv-01202 (S.D.N.Y.); *Purcell, et al., v. Continental Aktiengesellschaft, et al.,* Case No. 24-cv-00938 (S.D.N.Y.); *Link v. Continental AG, et al.*, Case No. 24-cv-00913 (D.S.C); *Valenzano v. Continental Aktiengesellschaft, et al.*, Case No. 24-cv-00948 (D.S.C.); and *Bengel v. Continental Aktiengesellschaft, et al.*, Case No. 24-cv-00363 (N.D. Ohio).

[6] The Tag-Along Actions are: *Ammons, et al v. Continental Aktiengesellschaft, et al.,* Case No. 24-cv-01513 (S.D.N.Y); *Stephan v. Continental Aktiengesellschaft, et al.,* Case No. 24-408 (N.D. Ohio); *Gianne, et al v. Continental Aktiengesellschaft, et al.,* Case No. 24-cv-00431 (N.D. Ohio); *Shumate v. The Goodyear Tire & Rubber Company, et al.,* Case No. 24-cv-00449 (N.D. Ohio); *Williams v. Continental Aktiengesellschaft, et al.,* Case No. 24-cv-10632 (E.D. Mich.); *Carson, et al. v. Continental Aktiengesellschaft, et al.,* Case No. 24-cv-00475 (N.D. Ohio); *May v. Continental Aktiengesellschaft, et al.,* Case No. 24-cv-00476 (N.D. Ohio); *Slayman v. Continental Aktiengesellschaft, et al.,* Case No. 24-cv-01930 (S.D.N.Y); *Mai v. v. Continental Aktiengesellschaft, et al.,* Case No. 24-cv-01984 (S.D.N.Y.); *Price v. Continental Aktiengesellschaft, et al.,* Case No. 24-cv-01981 (S.D.N.Y.); *Alessi v. Continental Aktiengesellschaft, et al.,* Case No. 6:24-cv-01305 (D.S.C.); *Doherty v. Continental Aktiengesellschaft, et al.,* Case No. 6:24-cv-01304 (D.S.C.); and *Earls, et al v. Continental Aktiengesellschaft, et al.,* Case No. 24-cv-1332 (D.S.C.).

the Eastern District of Michigan ("E.D. Mich.").[7]

The Related Actions allege the same core factual allegations regarding a horizontal price-fixing agreement.

- The EC's announcement of an investigation into the passenger vehicle replacement tire industry;

- Numerous instances of parallel price increases for passenger vehicle replacement tires;

- High levels of market concentration in the industry;

- The inelastic demand for passenger vehicle replacement tires;

- Opportunities to conspire, including through revenue management companies, trade associations, and other means of information sharing;

- Significant barriers to entry into the market; and

- Defendants' history of antitrust violations.

In addition to the same core factual allegations, each of the Related Actions seeks compensatory damages and injunctive relief on behalf of direct or indirect purchases of new replacement tires for passenger vehicles in the United States from January 1, 2020, until Defendants' anticompetitive conduct ceased.

---

[7] Notices of Related Actions have been filed for nine of the Tag-Along Actions: *Gianne v. Continental Aktiengesellschaft* et al., No. 5:24-cv-00431 at ECF No. 5-1, *Stephan v. Continental Aktiengesellschaft* et al., No. 5:24-cv-00408 at ECF No. 8-1, *Williams v. Continental Aktiengesellschaft* et al., No. 2:24-cv-10632 at ECF No. 50-1; *Ammons, et al v. Continental Aktiengesellschaft, et al.,* Case No. 24-cv-01513 at ECF No. 68-1, *May v. Continental Aktiengesellschaft, et al.,* Case No. 24-cv-00476 at ECF No. 69-1, *Shumate v. The Goodyear Tire & Rubber Company, et al.,* Case No. 24-cv-00449 at ECF No. 70-1; *Alessi v. Continental Aktiengesellschaft, et al.,* Case No. 6:24-cv-01305 at ECF No. 74-1; *Doherty v. Continental Aktiengesellschaft, et al.,* Case No. 6:24-cv-01304 at ECF No. 74-1; and *Earls, et al v. Continental Aktiengesellschaft, et al.,* Case No. 24-cv-1332 at ECF No. 74-1.

The SDNY Plaintiffs agree that transfer of the Related Actions and Tag-Along Actions to a single district is warranted and support transfer to SDNY. SDNY is the most appropriate forum for this Multi-District Litigation proceeding. The majority of cases filed to-date support centralization in SDNY: the first case was filed in SDNY, and since then, an additional fourteen cases have been filed in SDNY, for a total of fifteen cases in SDNY. To date, six cases have been filed in N.D. Ohio, five cases have been filed in D.S.C., and one recent case has been filed in E.D. Mich. SDNY has the majority of pending actions, the experience and capacity to handle this complex antitrust litigation, and is the most logical geographic choice for parties that span the globe and the United States.

## **ARGUMENT**

### I. THE RELATED ACTIONS SHOULD BE TRANSFERRED AND CONSOLIDATED FOR PRETRIAL PROCEEDINGS

#### A. Transfer Is Appropriate Because the Related Actions Involve One or More Common Questions of Fact and Law.

Where, as here, multiple actions "involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407. "Antitrust actions present a category of actions that the Panel almost inevitably orders transferred if there are multiple actions pending in different districts." David F. Herr, *Multidistrict Litigation Manual* § 5:14, p. 127 (2012); *see also In re Digital Advert. Antitrust Litig. ("In re Digital Advert.")*, 555 F. Supp. 3d 1372, 1375 (J.P.M.L. 2021) ("All actions present common factual questions concerning the allegation that Google has monopolized or suppressed competition in online display advertising services in violation of federal antitrust law."); *In re Qualcomm Antitrust Litig.*, 273 F. Supp. 3d 1373, 1375 (J.P.M.L. 2017) ("Plaintiffs in all the actions listed on Schedule A assert similar claims for violations of federal and state antitrust and consumer protection laws."); *In re Visa/Mastercard*

*Antitrust Litig.*, 295 F. Supp. 2d 1379, 1380 (J.P.M.L. 2003) ("All six actions share factual questions relating to allegations that Visa and MasterCard's 'Honor All Cards' policy violates the Sherman Antitrust Act."); *In re Parcel Tanker Shipping Servs. Antitrust Litig.*, 296 F. Supp. 2d 1370, 1371 (J.P.M.L. 2003) ("All actions share factual questions relating to the existence, scope and effect of an alleged conspiracy to fix the price of international shipments of liquid chemicals in the United States.").

The Related Actions share the same basic legal theory: that Defendants allegedly violated the antitrust laws by conspiring to fix the prices of new replacement tires for passenger cars, vans, trucks, and buses sold in the United States. Each of the pending actions include proposed nationwide class actions on behalf of direct or indirect purchasers of passenger vehicle replacement tires. Some actions also include state law or consumer protection claims, but "the assertion of different legal claims or additional facts is not significant where, as here, the actions arise from a common factual core." *In re Insulin Pricing Litig.*, MDL No. 3080, 2023 WL 5065090, at *2 (J.P.M.L. 2023).

The questions of law and fact common to the Related Actions include:

- which Defendants were involved in the price-fixing conspiracy, and at what times;
- whether Defendants colluded to set the price of passenger vehicle replacement tires in the United States;
- whether Defendants' conduct raised the price of passenger vehicle replacement tires in the United States, and by how much;
- whether Defendant's alleged conduct constitutes a *per se* violation of the antitrust laws;

- whether, and to what extent Defendants' conduct caused direct and indirect purchasers of passenger vehicle replacement tires to pay supracompetitive prices, and thereby, to suffer antitrust injuries;

- whether Defendants violated the Sherman Act; and

- whether the proposed classes should be certified under the Federal Rules of Civil Procedure.

These common issues warrant the transfer of these actions to a single judicial district for consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See, e.g., In re Generic Digoxin & Doxycycline Antitrust Litig.,* MDL No. 2724, 222 F. Supp. 3d 1341 (J.P.M.L. 2017) (establishing MDL for price-fixing antitrust); *In re Auto. Wire Harness Sys. Antitrust Litig.*, MDL No. 2311, 867 F. Supp. 2d 1349 (J.P.M.L. 2012) (same); *In re: Text Messaging Antitrust Litig.*, MDL No. 1997, 588 F. Supp. 2d 1372, 1373 (J.P.M.L. 2008) (finding common questions of fact to warrant centralization where all "actions share factual questions relating to allegations that defendants conspired to fix, raise, maintain, and stabilize the price of text messaging services sold in the United States in violation of the Sherman Antitrust Act.").

**B. Transfer and Consolidation or Coordination for Pretrial Proceedings Will Serve the Convenience of the Parties and Witnesses and Promote the Just and Efficient Conduct of the Litigation.**

In light of the common factual and legal allegations asserted and nearly identical legal theories pursued by Plaintiffs in the Related Actions, transferring these actions to one jurisdiction will serve the "convenience of parties and witnesses and will promote the just and efficient conduct" of the litigation. 28 U.S.C. § 1407(a). The Panel has found that § 1407's convenience requirement is met when transfer and consolidation or coordination prevent duplicative discovery and inconsistent pretrial rulings. *See, e.g., In re Digital Advert.,* 555 F. Supp. 3d at

1375 ("Centralization will promote the just and efficient conduct of the litigation by eliminating duplicative discovery and avoiding the risk of inconsistent rulings on pretrial matters, particularly on discovery disputes, Daubert issues, and dispositive motions."); *In re Fresh & Process Potatoes Antitrust Litig.*, 744 F. Supp. 2d 1381, 1382 (J.P.M.L. 2010) ("These actions share factual questions relating to alleged anticompetitive conduct in the market for fresh and process potatoes. Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary.").

Centralizing the Related Actions for pretrial proceedings will eliminate duplicative discovery because Plaintiffs in the Related Actions will seek to develop similar evidence, including evidence of Defendants' alleged conspiracy. *See, e.g., In re Digital Advert.* 555 F. Supp. 3d at 1375 (recognizing that all actions would require the same common discovery from Google and Facebook); *In re: Online DVD Rental Antitrust Litig.*, 609 F. Supp. 2d 1376, 1377 (J.P.M.L. 2009) (cases "share factual questions arising out of allegations that defendants conspired to divide the online DVD rental market in violation of federal antitrust laws. Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary."). To prove the antitrust claims alleged in the Related Actions, Plaintiffs (both direct and indirect) will request the same documents and transactional data and seek to depose many of the same individuals. There is no reason the parties should be required to respond to multiple pretrial motions and discovery requests, or for parties and witnesses to travel throughout the country to appear in multiple proceedings.

Transfer and consolidation or coordination will solve these problems: it will permit the transferee judge to formulate a single, unified pretrial program that minimizes the inconvenience and overall expense for all parties and witnesses. *See In re Commodity Exch., Inc., Gold Futures & Options Trading Litig.*, 38 F. Supp. 3d 1394, 1395 (J.P.M.L. 2014) ("Centralization will . . . conserve the resources of the parties, their counsel, and the judiciary."); *see also In re: Lidoderm Antitrust Litig.,* 11 F. Supp. 3d 1344, 1345 (J.P.M.L. 2014) (same); *In re: Aluminum Warehousing Antitrust Litig.,* 988 F. Supp. 2d 1362, 1363 (J.P.M.L. 2013) (same). While direct and indirect purchaser class actions will be tried separately, the pretrial proceedings are, for practical purposes, the same.

Moreover, if courts in each district were forced to resolve these issues in separate pretrial proceedings, scarce judicial resources would be needlessly wasted. There would be a substantial likelihood that such duplicative proceedings would result in inconsistent rulings, especially regarding certification of the direct and indirect purchaser classes. *See, e.g., In re Broiler Chicken Grower Antitrust Litig.*, 509 F. Supp. 3d 1359, 1361 (J.P.M.L. 2020) ("Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings (including with respect to class certification and Daubert motion practice); and conserve the resources of the parties, their counsel, and the judiciary."); *In re Treasury Sec. Auction Antitrust Litig.*, 148 F. Supp. 3d 1360, 1362 (J.P.M.L. 2015) (transferring related actions to SDNY, holding that "[c]entralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel and the judiciary."). The Panel has "consistently held that the existence of and the need to eliminate [the possibility of inconsistent class certification rulings] presents a highly persuasive reason favoring transfer under Section 1407." *In re Roadway Exp., Inc. Emp't Pracs. Litig.*, 384 F. Supp. 612, 613

(J.P.M.L. 1974); *see also In re Plumbing Fixture Cases*, 298 F. Supp. 484, 493 (J.P.M.L. 1968) (explaining that § 1407 was designed to prevent "pretrial chaos" resulting from "conflicting class action determinations").

Transfer and consolidation or coordination is necessary to avoid these inefficiencies and inconsistencies, and to promote the just and efficient conduct of the Related Actions. Thus, this consideration weighs heavily in favor of centralizing the Related Actions.

## II. THE ACTIONS SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK.

In determining the appropriate transferee district, the Panel considers a variety of factors, including: (1) whether the district "offers a forum that is both convenient and accessible for the parties and witnesses[;]" (2) the location of "relevant witnesses and evidence"; (3) the positions of the parties; and (4) the experience of the transferee judge and district in navigating "the nuances of complex and multidistrict litigation." *In re: Aggrenox Antitrust Litig. ("In re: Aggrenox")*, 11 F. Supp. 3d 1342, 1343 (J.P.M.L. 2014). SDNY Plaintiffs submit that SDNY is the most appropriate transferee district.

### A. SDNY Is Where the First Case Was Filed, Where the Most Cases Are Pending, Where the Cases Have Progressed the Farthest and Is Supported by the Majority of Plaintiffs and Law Firms.

SDNY is the most appropriate transferee district for this litigation. Historically, when determining the appropriate transferee district, the Panel has considered as important factors: (i) where the first Related Action was filed; (ii) the positions of the parties; and (iii) where the cases have advanced the farthest. *In re Int. Rate Swaps Antitrust Litig.* ("*In re Int. Rate Swaps*"), 190 F. Supp. 3d 1364, 1366 (J.P.M.L. 2016) (transferring case to SDNY and noting it was the venue for the first-filed action); *In re: Aggrenox*, 11 F. Supp. 3d at 1343 (transferring case to the District of Connecticut and noting that several plaintiffs supported transferring to that district); *In re*

9

*Fontainebleau Las Vegas Contr. Litig.,* 657 F. Supp. 2d 1374, 1375 (J.P.M.L. 2009) (transferring to the Southern District of Florida because, *inter alia*, it has the most advanced action).

The first-filed Related Action, *Sampayan v. Continental Aktiengesellschaft, et al.,* Case No. 1:24-cv-00881 (S.D.N.Y.) (February 7, 2024), is pending in SDNY. This weighs in favor of transfer to and centralization in SDNY. *See In re Int. Rate Swaps*, 190 F. Supp. 3d at 1366 (selecting SDNY as transferee district in part because the first-filed case was pending there); *In re Sierra Wireless, Inc., Sec. Litig.,* 387 F. Supp. 2d 1363, 1365 (J.P.M.L. 2005) (same); *In re Elevator & Escalator Antitrust Litig. ("In re Elevator & Escalator"),* 350 F. Supp. 2d 1351, 1353 (J.P.M.L. 2004) (same).

Second, a majority of the parties support transfer to and centralization in SDNY. A vast majority of the Related Actions are pending in SDNY (eleven of fourteen). *See In re Treasury Sec. Auction Antitrust Litig.,* 148 F. Supp. 3d at 1362 (selecting SDNY as the transferee district, in part because "the vast majority of actions" were pending there); *In re Elevator & Escalator,* 350 F. Supp. 2d at 1353 (selecting SDNY in part because a majority of actions were pending there); *In re Cotton Yarn,* 336 F. Supp. 2d 1383, 1384 (J.P.M.L. 2004) (selecting a district where "six of the seven actions in this litigation are currently pending"). Including the Tag-Along Actions, there are now fifteen cases pending in SDNY. In comparison, only six cases are pending in N.D. Ohio, five are pending in D.S.C., and one is pending in E.D. Mich. Moreover, a majority of Plaintiffs in the Related Actions – eleven of eighteen – support transfer to and centralization in SDNY.

Third, SDNY is where the cases have advanced the farthest. *In re Fontainebleau Las Vegas,* 657 F. Supp. 2d at 1375 (transferring related actions to district where pending action was "more advanced"); *In re Kaehni Patent,* 311 F. Supp 1342, 1343 (J.P.M.L. 1970) (transferee

10

district appropriate where "pretrial proceedings are somewhat more advanced"). To date, all SDNY Related Actions have been transferred to Judge Ramos. SDNY Plaintiffs' counsel have worked cooperatively to efficiently progress the SDNY Related Actions, including by filing a motion to: (i) consolidate the direct purchaser actions; (ii) consolidate the indirect purchaser actions; (iii) coordinate the consolidated actions for pre-trial proceedings; (iv) set a procedure for automatically consolidating subsequently filed related actions; and (v) establish a master docket.[8] SDNY Plaintiffs have served all domestic defendants[9] and are effectuating service on foreign Defendants. Furthermore, all Plaintiffs in SDNY are coordinating with defense counsel and other Plaintiffs' counsel on a proposed global stipulation to extend the time for Defendants to respond to all complaints. Based on these three important factors, SDNY is the most appropriate transferee district.

**B.     Defendants Contacts with New York Are Substantial.**

Defendants have significant contacts with SDNY—both direct (e.g., through corporate activities and physical points of sale) and indirect (e.g., through third party trade associations). Given its location and role, SDNY also represents the logical "center of gravity" of Defendants' activities.

First, various Defendants have substantial direct contacts with SDNY through diverse means, such as their location of incorporation, corporate offices, marketing activities and numerous physical points of sale through a network of dealers in the region. Defendant Michelin

---

[8] Motion to Consolidate Cases, Case No. 24-cv-00881, ECF No. 43 (Mar. 13, 2024).

[9] Order Granting Letter Motion for Extension of Time, Case No. 24-cv-00967, ECF No. 22 (Mar. 4, 2024); Order Granting Letter Motion for Extension of Time, Case No. 24-cv-01092, ECF No. 39 (Mar. 8, 2024); Order Granting Letter Motion for Extension of Time to File Answer or Other Response to Complaint, Case No. 24-cv-00881, ECF No. 49 (Mar. 15, 2024); Order Granting Letter Motion for Extension of Time to Answer, Case No. 24-cv-01038, ECF No. 50 (Mar. 15, 2024).

11

North America, Inc., for example, is incorporated under the laws of the State of New York. In addition, Defendant Pirelli Tire LLC is a wholly-owned subsidiary of Pirelli North America Inc., which is headquartered in New York.[10] Defendant Pirelli Tire LLC maintains sales and marketing offices in New York City, and the company's U.S. press releases likewise indicate New York as the place of publication.[11] Collectively, Defendants market and sell their products through hundreds of authorized dealers within the confines of the territory covered by SDNY.[12]

Second, Plaintiffs in the Related Actions anticipate, as is common in other antitrust litigation, that third-party trade associations and industry organizations may be essential sources of critical discovery. Indeed, Defendants are members of various organizations and trade associations, many of which are located within New York. The Tire Industry Project ("TIP"), for example, is a sector-specific initiative within the World Business Council for Sustainable Development ("WBCSD") and is the primary global forum for the tire industry on sustainability issues.[13] Member companies of the TIP include Bridgestone, Continental, Goodyear, Michelin, and Pirelli, amongst others,[14] and WBCSD North America maintain their headquarters in New

---

[10] MA(N)CHINE LEARNING, Annual Report 2022, https://corp-assets.pirelli.com/corporate/AR22_ENG_COMPLETO_INTERATTIVO.pdf at 419 (last visited Mar. 19, 2024).

[11] U.S. TIRE MANUFACTURERS ASSOCIATION, https://www.ustires.org/pirelli-tire-llc (last visited Mar. 19, 2024).

[12] PIRELLI, *Tire Catalog,* https://www.pirelli.com/tires/en-us/car/near-tire-shops-and-repair/united-states/new%20york; Continental, *Store Finder,* https://continentaltire.com/store-finder; Nokian TYRES, *Dealer Locator,* https://www.nokiantires.com/where-to-buy/dealer-locator/; Bridgestone Tire, *Local Dealers,* https://www.bridgestonetire.com/dealer/; MICHELIN, *Car Tire Dealer,* https://www.michelinman.com/auto/dealer-locator/new-york-ny-10011-usa; Goodyear, *Tire Store Locator,* https://www.goodyear.com/en_US/tire-stores/NY (last visited Mar. 19, 2024).

[13] WBCSD, *Tire Industry Project,* https://www.wbcsd.org/Sector-Projects/Tire-Industry-Project (last visited Mar. 19, 2024).

[14] WBCSD, *About the Tire Industry Project,* https://www.wbcsd.org/Sector-Projects/Tire-Industry-Project/Resources/About-the-Tire-Industry-Project (last visited Mar. 19, 2024).

York City.[15] Likewise, The Conference Board is a non-profit business membership and research group headquartered in New York City, of which Goodyear and Michelin, amongst others, are members.[16] Transferring these actions to SDNY will facilitate third-party discovery related to trade associations and industry organizations.

Accordingly, SDNY will be a convenient forum for Defendants.

### C. SDNY Has the Required Experience and Resources to Adjudicate Complex Antitrust Actions.

SDNY has the experience and capacity to handle the complex litigation of MDLs, a common consideration by the Panel. *See, e.g., In re Pharmacy Ben. Managers,* 452 F. Supp. 2d 1352, 1354 (J.P.M.L. 2006) (recognizing that the transferee district "has the experience to steer this litigation on a prudent course."). SDNY has successfully adjudicated 169 MDLs[17] and continues to oversee eleven.[18] SDNY has four pending antitrust MDLs, showing the district's on-going experience with the subject matter.[19] Between October 1, 2022, and September 30, 2023, SDNY closed five MDLs and has another with no active cases remaining, demonstrating that the district has the experience and capacity to resolve consolidated cases.[20] Finally, as a

---

[15] WBCSD, WBCSD *North America,* https://www.wbcsd.org/Overview/About-us/Our-offices/North-America (last visited Mar. 19, 2024).

[16] THE CONFERENCE BOARD, https://www.conference-board.org/us (last visited Mar. 19, 2024).

[17] United States Judicial Panel on Multidistrict Litigation, Multidistrict Litigations Terminated Through September 30, 2023, https://www.jpml.uscourts.gov/sites/jpml/files/JPML_Fiscal_Year_2023_Terminated_Litigations_Report_0.pdf at 7 (last accessed Mar. 19, 2024).

[18] United States Judicial Panel on Multidistrict Litigation, MDL Statistics Report – Distribution of Pending MDL Dockets by District, at 3–5, https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-March-1-2024.pdf (last accessed Mar. 19, 2024).

[19] *Id.*

[20] *See*, *supra*, n. 17

metropolitan district with multiple courthouses and serving a large population, SDNY has a large Clerks' office with the staff experience and capacity to handle the additional filings that would come with the consolidated cases. *See, e.g., In re Ins. Brokerage Antitrust Litig.,* 360 F. Supp. 2d 1371, 1373 (J.P.M.L. 2005) (noting in its decision that the transferee "district is equipped with the resources that this complex antitrust docket is likely to require"); *In re Microsoft Corp. Windows Operating Sys. Antitrust Litig.*, 2000 WL 34448877, at *3 (J.P.M.L. 2000) (holding that the transferee district is a "metropolitan district equipped with the resources that this complex docket is likely to require.").

### D. SDNY Is the Best Suited and Most Convenient Forum for the Related Actions.

The Panel also routinely favors districts that are geographically central and accessible for all parties. *See, e.g., In re Local TV Advert. Antitrust Litig.,* 338 F. Supp. 3d 1341, 1343 (J.P.M.L. 2018) ("this district provides a geographically central and convenient location for the parties and witnesses"); *In re Circular Thermostat Antitrust Litig.*, 370 F. Supp. 2d 1355, 1357 (J.P.M.L. 2005) (noting that "this district, where an action is already pending, provides an accessible, metropolitan location").

SDNY offers easy access and accommodation for travelers through multiple airports with daily international flights and domestic flights into three airports, thousands of hotel rooms, frequent trains service and other robust local transportation options. *In re WorldCom, Inc., Sec. & "Erisa" Litig.*, 226 F. Supp. 2d 1352, 1355 (J.P.M.L. 2002) (transferring to SDNY as it is "well served by major airlines, provides ample hotel and office accommodations, and offers a well developed support system for legal services."). The parties are located around the world, with defendants headquartered in France, Germany, Italy, Finland, South Korea, Japan, and Singapore, and nationally in South Carolina, Tennessee, Ohio, Georgia, and California. The

14

Panel has previously favored SDNY for being geographically central and convenient for global litigation. *See In re: Libor-Based Fin. Instruments Antitrust Litig.,* 802 F. Supp. 2d 1380, 1381 (J.P.M.L. 2011) (noting SDNY is "relatively more convenient for those defendants based in the United Kingdom and Europe"); *In re Rhodia S.A., Sec. Litig.,* 398 F. Supp. 2d 1359, 1360 (J.P.M.L. 2005) ("the Southern District of New York . . . where an action is already pending, provides an accessible, metropolitan location"); *In re Parmalat Sec. Litig.,* 350 F. Supp. 2d 1356, 1357 (J.P.M.L. 2004) ("the Southern District of New York . . . is relatively conveniently located for parties and witnesses and their counsel located both in the United States and abroad."). Based upon these considerations, SDNY is preferable for its central location and accessibility.

### E. Judge Ramos Has the Requisite Experience to Oversee the Related Actions.

Judge Edgardo Ramos of SDNY is particularly well-suited to manage the Related Actions. He is currently presiding over the first-filed case and at least ten Related Actions and four Tag-Along Actions—a total of fifteen cases. Significantly, Judge Ramos has no MDL cases currently pending before him and has the ability to oversee a lengthy and complex MDL case such as this one.

Judge Ramos is a skilled jurist who will be able to manage the litigation prudently. He was nominated to the federal bench in 2011 and was unanimously confirmed by the U.S. Senate. During his time on the bench, Judge Ramos has adjudicated 937 class action cases and 16 antitrust cases, according to Westlaw Litigation Analytics. He has overseen class action antitrust litigation, specifically a price fixing case under the Sherman Act in *In Re SSA Bonds Antitrust Litig.*, 1:16-CV-03711 (S.D.N.Y. 2016). The litigation arose from 25 complaints brought against a number of banks and some of their employees who allegedly conspired to fix the prices of supranational, sovereign, and agency bonds. *Id.* Ultimately, the cases were consolidated, and Judge Ramos ruled on several dispositive motions. Judge Ramos also has experience with class

15

certification issues while handling other complex class action cases. *See, e.g., Villella v. Chem. & Mining Co. of Chile Inc.,* 333 F.R.D. 39, 47 (S.D.N.Y. 2019) (federal securities class action certified on September 24, 2019); *see also Falberg v. The Goldman Sachs Group, Inc. et al.,* 1:19-CV-09910 (S.D.N.Y. 2019) (ERISA class action certified on February 14, 2022).

In addition, Judge Ramos has overseen high profile non-class matters. In 2019, he affirmed the validity of subpoenas issued to Deutsche Bank and Capital One by the U.S. House of Representatives committees seeking financial records related to Donald Trump, his family, and businesses. *See Trump v. Deutsche Bank AG*, No. 19 CIV. 3826 (ER), 2019 WL 2204898, at *1 (S.D.N.Y. May 22, 2019), *aff'd in part, remanded in part*, 943 F.3d 627 (2d Cir. 2019), *vacated and remanded sub nom. Trump v. Mazars USA, LLP*, 591 U.S. 848 (2020).

Judge Ramos' experience and credentials demonstrate that he is an appropriate jurist to oversee the transferred actions in this litigation. *See, e.g., In re Delta Dental Antitrust Litig.,* 433 F. Supp. 3d 1358, 1359–60 (J.P.M.L. 2020) (holding that "centralization before the Honorable Elaine E. Bucklo allows us to assign this litigation to an able jurist with significant MDL experience"); *In re Microsoft Corp.,* 2000 WL 34448877, at *3 (considering Chief Judge Motz' experience in concluding that "we are confident that we are entrusting this important and challenging assignment to an able jurist").

### F. South Carolina Is Not a Convenient Forum for the Actions.

The Panel should reject any arguments that the Related Actions should be centralized in D.S.C. Aside from the fact that only five actions are pending in D.S.C. as of this filing, it is a significantly less convenient and accessible forum for the parties than SDNY.

As explained above, SDNY is a well-suited and convenient forum for the Related Actions. D.S.C., on the other hand, lacks the same convenience, particularly the Greenville Division where the two South Carolina actions are pending. The only major airport in the

Greenville area, the Greenville-Spartanburg International Airport, has zero direct international flights and only directly services 22 domestic destinations.[21] In a complex action like this one where there are several European-based Defendants who may have in-house counsel that will travel and U.S.-based Plaintiffs' and Defense counsel from across the country, having an easily accessible forum is paramount. "The geographical location of the transferee court is especially relevant when counsel must travel from distant parts of the country" and the world. *In re Air Fare Litig.*, 322 F. Supp. 1013, 1015 (J.P.M.L. 1971).

While two Defendants are headquartered in South Carolina,[22] none of the Plaintiffs in the Related Cases or Tag-Along Actions reside in South Carolina. In assessing conveniences, "the Panel must weigh the interests of *all* parties and must consider multiple litigation *as a whole*." *In re Grain Shipments*, 304 F. Supp. 457, 458 (J.P.M.L. 1969) (emphasis added). Based upon the "overall convenience of the majority of the parties," (*Id.*) D.S.C. is less convenient than SDNY.

Finally, D.S.C. has a high number of pending cases per judgeship, and higher median time of disposition than SDNY. According to the 2023 data, D.S.C. had 941 pending cases per judgeship, while SDNY had 626.[23] Likewise, D.S.C. takes eight to nine months on average to dispose of a civil case, while SDNY only takes 6 months.[24] In a complex matter such as this one, it is in the best interest of all parties to conduct the litigation efficiently. SDNY is most equipped to do so.

---

[21] Greenville-Spartanburg International Airport, https://gspairport.com (last visited Mar. 19, 2024).

[22] Defendants Continental Tire the Americas, LLC and Michelin North America, Inc. have their principal places of business in South Carolina.

[23] United States District Courts — National Judicial Caseload Profile (2023), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2023.pdf.

[24] *Id.*

**G.     The Northern District of Ohio Is Not a Convenient Forum for the Actions.**

N.D. Ohio is not a convenient forum for similar reasons. It is geographically inconvenient for most counsel and witnesses, including foreign defendants, and it has a longer filing-to-disposition period of civil cases than SDNY.

While one Defendant is headquartered in Ohio, none of Defendants' counsel are located in the state.[25] As of the filing of Plaintiff Samapayan's Transfer Motion, only one Plaintiff[26] out of eighteen in the Related Actions, including the first-filed case, resides in Ohio. Of the Tag-Along Actions, only two Plaintiffs reside in Ohio as of this filing. Finally, like South Carolina, Ohio does not have direct flights for European Defendants.[27] As it is not a conveniently located forum, the burden and costs associated with litigating this case in N.D. Ohio are outweighed by any potential benefit. *Id.* (transferring to a district that was "more convenient for counsel and thus less expensive for their clients"); *In re Sulfuric Acid Antitrust Litig.*, 270 F. Supp. 2d 1379, 1380 (J.P.M.L. 2003) (rejecting N.D. Ohio for a district that was more "accessible and geographically central location for both the domestic and foreign [] parties" and was more "equipped with the resources that [a] complex antitrust docket" would require).

Finally, the median time from filing to disposition of civil actions is 8.6 months in N.D. Ohio, compared to 6 months in SDNY.[28] All parties and counsel would benefit from the time,

---

[25] Counsel for Defendants are located in New York, Washington D.C., California, Georgia, and Illinois.

[26] Jack Bengel and Tracey May

[27] *See* CLEVELAND HOPKINS INTERNATIONAL AIRPORT, *NON-STOP CITIES,* https://www.clevelandairport.com/flight-information/non-stop-cities, (last visited Mar. 19, 2024) (showing Dublin, Ireland as the only non-stop European destination).

[28] *See, supra,* n. 23.

18

expense, and efficiencies with a quicker resolution of the litigation. Thus, SDNY is equipped to handle this litigation efficiently.

### H. The Eastern District of Michigan Is Not a Convenient Forum

E.D. Mich poses similar issues as N.D. Ohio and D.S.C. As an initial matter, there is only one case filed in Michigan. It is likewise not as convenient as SDNY because: (1) it is geographically inconvenient for most parties as only two Plaintiffs[29] reside in Michigan; (2) it has a longer civil case disposition period (8.5 months) than SDNY (6 months)[30]; and (3) it poses a risk of subsequent transfer in venue under 28 U.S.C. § 1404(a) as no Defendants or potentially significant third parties are located in E.D. Mich.

In comparison to all other proposed districts, SDNY is the most convenient and has demonstrated the capability and capacity to efficiently manage this litigation.

### CONCLUSION

For the foregoing reasons, SDNY Plaintiffs respectfully request that the Panel transfer and centralize the Related Actions before the Hon. Edgardo Ramos of the Southern District of New York or another judge in the District.

Dated: March 20, 2024                                  Respectfully submitted,

*/s/ Jeffrey Gittleman*                                 */s/ Kellie Lerner*
Jeffrey Gittleman                                        Kellie Lerner
**Pogust Goodhead, LLC**                                 **Robins Kaplan LLP**
161 Washington St., Suite 250                            1325 Avenue of the Americas, Suite 2601
Conshohocken, PA 19428                                   New York, NY 10019
Tel: 610-941-4204                                        Tel: 212-880-7400
Fax: 610-941-4245                                        Fax: 212-980-7499
jgittleman@pogustgoodhead.com                            klerner@robinskaplan.com
*Counsel for Plaintiff Marco A. Torres*                  *Counsel for Catip Islami*

---

[29] Frank Novak and Kenneth Williams

[30] *See, supra,* n. 23.

*/s/ John Radice*
John Radice
**Radice Law Firm, P.C.**
475 Wall Street
Princeton, NJ 08540
Tel: 646-245-8502
Fax: 609-385-0745
jradice@radicelawfirm.com
*Counsel for Plaintiffs Susan Davidov and Robert Furst*

*/s/ Michael J. Flannery*
Michael J. Flannery
**Cuneo Gilbert & LaDuca, LLP**
Two CityPlace Drive, Floor 2
St. Louis, MO 63141
Tel: 314-226-1015
Fax: 202-789-1813
mflannery@cuneolaw.com
*Counsel for Plaintiff Wilkerson Farms ET, LLC*

*/s/ David B. Harrison*
David B. Harrison
**Spiro Harrison & Nelson**
40 Exchange Place, Suite 1404
New York, NY 10005
Tel: 646-880-8850
Fax: 973-232-0887
dharrison@shnlegal.com
*Counsel for Plaintiff Michele Edwards*

*/s/ Heidi M. Silton*
Heidi M. Silton
**Lockridge Grindal Nauen PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel: 612-339-6900
Fax: 612-339-0981
hmsilton@locklaw.com
*Counsel for Plaintiff James Alford*

*/s/ Daniel L. Warshaw*
Daniel L. Warshaw
**Pearson Warshaw LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Tel: 818-788-8300
Fax: 818-788-8104
dwarshaw@pwfirm.com
*Counsel for Plaintiffs Michael Curran and Timothy Borland*

*/s/ Gregory Asciolla*
Gregory Asciolla
**DiCello Levitt LLP**
485 Lexington Avenue, Suite 1001
New York, New York 10017
Tel: 646-933-1000
Fax: 646-494-9648
gasciolla@dicellolevitt.com
*Counsel for Plaintiff Michael Spadafino*