**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In Re: Passenger Vehicle Replacement Tires Antitrust Litigation | MDL No. 3107 |

**RESPONSE BY PLAINTIFFS GUSTAVE LINK, TRACEY MAY, CHRIS EARLS, RYAN FRITZINGER, TODD SEROTTE, WILLIAM SANTOYO, AND JOSHUA DUTTON IN PARTIAL SUPPORT OF PLAINTIFF SAMPAYAN'S MOTION TO TRANSFER RELATED ACTIONS FOR CONSOLIDATED OR COORDINATED PRETRIAL PROCEEDINGS**

Plaintiffs Gustave Link, Tracey May, Chris Earls, Ryan Fritzinger, Todd Serotte, William Santoyo, and Joshua Dutton (collectively, "Plaintiffs") respectfully submit this response in partial support of Plaintiff Sampayan's Motion to Transfer and Centralize Related Actions for Consolidated or Coordinated Pretrial Proceedings. (Dkt. 1.)

Plaintiffs support centralization but submit that the District of South Carolina is the superior forum for transfer, and that the Honorable Jacquelyn D. Austin or the Honorable David C. Norton or the Hon. Joseph F. Anderson are excellent jurists to preside over these cases. Absent consolidation in the District of South Carolina, Plaintiffs submit that the Northern District of Ohio is an appropriate, second-choice alternative for transfer and centralization of the Related Actions.

**BACKGROUND**

**I.     FACTUAL BACKGROUND**

On January 30, 2024, the European Commission ("EC"), in collaboration with national competition authorities from European Union Member States, carried out unannounced

inspections of the premises of several tire companies, including Defendants[1]. ¶ 2.[2] The EC stated that the inspections concerned new replacement tires for passenger cars, vans, trucks, and busses sold in the European Economic Area and possible price coordination between Defendants. *Id.* The replacement tire market in the United States was valued at $61 billion in 2022 and is concentrated in the hands of a few companies: Defendants Bridgestone, Michelin, and Goodyear made up almost 64 percent of the entire market in 2022 while the remainder includes Defendants such as Continental and Nokian. ¶¶ 50, 97, 98. Plaintiffs allege Defendants conspired to and did set and maintain supracompetitive prices for passenger vehicle replacement tires without losing revenue. ¶¶ 118, 166.

## II.    RELATED ACTIONS

Since February 7, 2024, at least 25 class action cases have been filed relating to the same or substantially similar alleged conspiracy to fix the prices of vehicle replacement tires in the United States (collectively, the "Related Actions"). The Related Actions involve overlapping Defendants and each alleges that Defendants conspired to fix the prices of new replacement tires for passenger cars, vans, trucks, and buses sold in the United States in violation of federal and state antitrust and consumer protection laws.  Each Related Action alleges lockstep price increases and similar factors that corroborate Defendants' horizonal price-fixing agreement, including the EC's announcement, the sudden and dramatic parallel price increases, the high levels of market concentration, the significant barriers to entry, the inelastic demand for replacement tires, and

---

[1] Defendants in the Link case include Continental AG; Continental Tire the Americas, LLC; Compagnie Générale des Établissements; Michelin North America, Inc.; Nokian Tyres plc; Nokian Tyres Inc; Nokian Tyres U.S. Operations LLC; The Goodyear Tire & Rubber Company; Pirelli & C. S.p.A.; Pirelli Tire LLC; Bridgestone Corporation; Bridgestone Americas, Inc.; and unidentified Doe Defendants (collectively, "Defendants").
[2] All "¶" references are to paragraphs in the Complaint filed in the *Link* action. Case No. 6:24-cv-00913-JDA, Dkt. 1 (D.S.C.).

Defendants' history of antitrust violations. Each of the Related Actions seeks compensatory damages and injunctive relief on behalf of direct or indirect purchasers of tires in the United States from January 1, 2020, until Defendants' anticompetitive conduct ceased.

The Related Actions are all in a similar procedural posture. All are in the very earliest stages of litigation: no dispositive motions have been filed and discovery has yet to commence.

The current distribution of Related Actions in each district is as follows:

A.  **The Southern District of New York, on behalf of direct purchasers:** *Sampayan v. Continental Aktiengesellschaft, et al.*, Case No. 1:24−cv−00881 (S.D.N.Y.); *Islami v. Continental Aktiengesellschaft, et al.*, Case No. 1:24−cv−00967 (S.D.N.Y.); *Alford v. Bridgestone Corporation, et al.*, Case No. 1:24−cv−01038 (S.D.N.Y.); *Edwards v. Continental Aktiengesellschaft, et al.*, Case No. 1:24−cv−01092 (S.D.N.Y.); *Torres v. Continental Aktiengesellschaft, et al.*, Case No. 1:24−cv−01124 (S.D.N.Y.); *Davidov, et al., v. Continental Aktiengesellschaft, et al.*, Case No. 1:24−cv−01367 (S.D.N.Y.); *Curran v. The Goodyear Tire & Rubber Co., et al.*, Case No. 1:24−cv−01419 (S.D.N.Y.); and *Slayman v. Continental Aktiengesellschaft, et al.*, No. 1:24-cv-01930 (S.D.N.Y.).

B.  **The Southern District of New York, on behalf of indirect purchasers:** *Purcell, et al., v. Continental Aktiengesellschaft, et al.*, Case No. 1:24-cv-00938 (S.D.N.Y.); *Wilkerson Farms ET, LLC v. Continental Aktiengesellschaft, et al.*, Case No. 1:24-cv-00970 (S.D.N.Y.); *Novak v. Continental Aktiengesellschaft, et al.*, Case No. 1:24−cv−01202 (S.D.N.Y.); *Spadafino v. Continental Aktiengesellschaft, et al.*, No. 1:24-cv-01452 (S.D.N.Y.); *Ammons, et al., v. Continental Aktiengesellschaft, et al.*, No. 1:24-cv-01513 (S.D.N.Y.); *Mai v. Continental Aktiengesellschaft, et al.*, No. 1:24-cv-01984 (S. N.Y.); and *Price v. The Goodyear Tire & Rubber Co., et al.*, Case No. 1:24−cv−01981 (S.D.N.Y.).

     **C.**     **The District of South Carolina, on behalf of indirect purchasers:** *Link v. Continental Aktiengesellschaft, et al.*, Case No. 6:24-cv-00913 (D.S.C.); *Valenzano v. Continental Aktiengesellschaft, et al.*, No. 6:24-cv-00948 (D.S.C.); *Alessi v. Continental Aktiengesellschaft, et al.*, No. 6:24-cv-01305 (D.S.C.); and *Earls, et al., v. Continental Aktiengesellschaft, et al.*, Case No. 0:24-cv-01332 (D.S.C.).

     **D.**     **The District of South Carolina, on behalf of direct purchasers:** *Doherty v. Continental Aktiengesellschaft, et al.*, No. 6:24-cv-01304 (D.S.C.).

     **E.**     **The Northern District of Ohio, on behalf of indirect purchasers:** *May v. Continental Aktiengesellschaft, et al.*, Case No. 5:24-cv-00476 (N.D. Ohio); *Gianne, et al., v. Continental Aktiengesellschaft, et al.*, No. 5:24-cv-00431 (N.D. Ohio).

     **F.**     **The Northern District of Ohio, on behalf of direct purchasers:** *Bengel v. Continental Aktiengesellschaft, et al.*, Case No. 5:24-cv-00363 (N.D. Ohio); *Stephan v. Continental Aktiengesellschaft, et al.*, No. 5:24-cv-00408 (N.D. Ohio); *Shumate v. Continental Aktiengesellschaft, et al.*, No. 5:24-cv-00449 (N.D. Ohio); and *Carson, et al., v. Continental Aktiengesellschaft, et al.*, No. 5:24-cv-00475 (N.D. Ohio).

     **G.**     **The Eastern District of Michigan, on behalf of direct purchasers:** *Williams v. Continental Aktiengesellschaft, et al.*, Case No. 2:24-cv-10632 (E.D. Mich.).

## ARGUMENT

## I.    CENTRALIZATION IS WARRANTED UNDER 28 U.S.C. § 1407

Plaintiffs agree that transfer and centralization under section 1407 is warranted. The Related Actions all assert substantially similar factual allegations and focus on a common set of events. The Panel routinely grants motions for transfer and centralization in antitrust cases where numerous related actions are pending. *See, e.g.*, *In re Digital Advert. Antitrust Litig.*, 555 F. Supp.

3d 1372 (J.P.M.L. 2021); *In re Qualcomm Antitrust Litig.*, 273 F. Supp. 3d 1373, 1375 (J.P.M.L. 2017); *In re Visa/Mastercard Antitrust Litig.*, 295 F. Supp. 2d 1379, 1380 (J.P.M.L. 2003); *In re Polyester Staple Antitrust Litig.*, 259 F. Supp. 2d 1376, 1377 (J.P.M.L. 2003).

## II.    THE PANEL SHOULD TRANSFER THE RELATED ACTION TO THE DISTRICT OF SOUTH CAROLINA

The District of South Carolina is the superior forum for the centralized action. In choosing an appropriate transferee forum, this Panel considers: (1) where the largest number of cases is pending; (2) where discovery has occurred; (3) where cases have progressed furthest; (4) the site of the occurrence of the common facts; (5) where the cost and inconvenience will be minimized; and (6) the experience, skill, and caseloads of available judges. *See Manual for Complex Litigation*, § 20.131 (4th ed. 2004). While several of these factors are neutral, the District of South Carolina presents the most appropriate forum for transfer and centralization of these Actions, primarily because it is where two of the Defendants are headquartered, has relatively few MDLs and a more hospitable caseload, is a location central to all defendants' U.S. headquarters, and has highly qualified and experienced judges who will handle these matters in a capable and efficient manner.

### A.    South Carolina Is Home to Two Defendants and Is Centrally Located to All Defendants' Headquarters.

The fourth and fifth factors described above strongly favor the District of South Carolina. Defendants Continental Tire the Americas, LLC and Michelin North America, Inc. are South Carolina corporations with their principal places of business in Fort Mill, South Carolina and Greenville, South Carolina, respectively. None of the Defendants are headquartered in New York.

With two Defendants headquartered in South Carolina, together controlling more than 25 percent of the entire replacement tire market in the United States, South Carolina is the dominant

site for the Actions. A substantial share of witnesses and evidence are also located in the District of South Carolina.

Furthermore, the District of South Carolina is a geographically central venue located relatively close to all the U.S. based Defendants' relevant headquarters. *See e.g. In re Air Crash Near Medan, Indonesia, On Sept. 5, 2005*, 544 F. Supp. 2d 1379, 1380-81 (J.P.M.L. 2008) (selecting the Northern District of Illinois partly because it is a "geographically central forum located approximately midway between the defendants' relevant headquarters"); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, 990 F. Supp. 834, 836 (J.P.M.L. 1998) (considering other factors where "no particular district or region emerges as the geographic center of gravity"). Among the twelve commonly named Defendants in the Related Actions, six are based in the United States and are headquartered as follows:

- Continental Tire the Americas, LLC: South Carolina
- Michelin North America, Inc.: South Carolina
- Nokian Tyres U.S.: Tennessee
- Bridgestone Americas, Inc.: Tennessee
- Pirelli Tire LLC: Georgia
- The Goodyear Tire & Rubber Company: Ohio

Due to the geographic congregation of the U.S. Defendants' headquarters in a relatively limited area, South Carolina is a focal point of the litigation and the most convenient and accessible transferee forum. On the other hand, the Southern District of New York is outside the geographic zone of all U.S.-based Defendants' headquarters and hours away from each headquarter even when traveled by plane. Travel to New York would be particularly inconvenient with the busiest airports in the world[3] and the worst traffic in the nation.[4]

---

[3] https://aci.aero/2023/07/19/aci-world-confirms-top-20-busiest-airports-worldwide/
[4] https://www.cnbc.com/2024/01/29/nyc-chicago-san-francisco-10-us-cities-with-the-worst-traffic.html

**B.      The District Of South Carolina Has Better Capacity to Efficiently Address the Litigation than SDNY.**

A paramount consideration in evaluating the appropriate transferee district is the court's capacity to efficiently address the litigation. The allegations in the underlying cases implicate millions of replacement tire purchases in the United States. Given the number and size of Defendants, as well as the large size of the putative class, it is critical that the transferee court have the resources to address the case and expeditiously move it along.

The Panel should transfer the Related Actions to the District of South Carolina, where only two MDLs are pending,[5] while 11 are pending in the Southern District of New York, one of the highest numbers in the country.[6] Centralization and transfer of the Related Actions to the District of South Carolina will enable a more efficient and expeditious proceeding. New York is the least appropriate option for judicial efficiency, and least appropriate option to serve the needs of the putative class in need of immediate injunctive relief.

**C.      Judge Austin, Judge Norton, and Judge Anderson Are Ideal Transferee Judges.**

While the Hon. Jacquelyn D. Austin is a relatively new District Judge, appointed to that position earlier this year, prior to her current appointment Judge Austin gained extensive experience as a U.S. Magistrate Judge in the District of South Carolina — a position she held since 2011. And, prior to that appointment, Judge Austin was a civil litigator in high-stakes litigation involving large companies, which no doubt will provide her with more valuable experience in

---

[5] *In re Aqueous Film-Forming Foams Prod. Liab, Litig.*, MDL No. 2:18-mn-2873 (D.S.C.) (Richard M. Gergel); *In re Blackbaud Inc., Customer Data Sec. Breach Litig.*, MDL No. 3:20-mn-2972 (D.S.C.) (Joseph F. Anderson, Jr.).

[6] *See* MDL Statistics Report – Distribution of Pending MDL Dockets by District, Mar. 1, 2024, *available at* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-March-1-2024.pdf.

adjudicating this matter. Combined with the Panel's frequent preference to assign MDL dockets to skilled judges who have not previously received an MDL assigned, Judge Austin is an ideal transferee jurist for these Actions. *See Multidistrict Lit. Man*. § 7.4; *In re Gardasil Prod. Liab. Litig.*, MDL No. 3036, 619 F. Supp. 3d 1356, 1358 (J.P.M.L. 2022) (assigning the docket to "a skilled jurist who has not yet had the opportunity to preside over an MDL."); *In re Neo Wireless, LLC, Pat. Litig.*, MDL No. 3034, 610 F. Supp. 3d 1383, 1385 (J.P.M.L. 2022) ("assign[ing] th[e] litigation to a jurist who has not yet had the opportunity to preside over an MDL."). The selection of Judge Austin would also advance the cause of promoting diversity in the roster of MDL judges.[7]

In the alternative, The Hon. David C. Norton presents another excellent selection from the District of South Carolina to preside over this MDL. Judge Norton brings the experience of having presided over an antitrust MDL before and, thus, offers invaluable knowledge and familiarity with handling a complex MDL action such as this one. *See In re: Household Goods Movers Antitrust Litigation*, MDL No. 1865 (J.P.M.L. 2007).

The Hon. Joseph F. Anderson also has presided over numerous multi-district litigations and handled them effectively and efficiently and would make yet another excellent choice to preside over this matter. *See, e.g., In re: Air Crash at Charlotte, North Carolina, on July 2, 1994*, MDL No. 1041 (J.P.M.L. 1994); *In re: Safety-Kleen Corp. Sec. Litig.*, MDL No. 1378 (J.P.M.L. 2000); *In re: Laidlaw Inc. Sec. Litig.*, MDL No. 1397 (J.P.M.L. 2000); and *In re: LandAmerica*

---

[7] *See* Duke Law Guidelines and Best Practices Addressing Chronic Failure to Diversify Leadership Positions in the Practice of Law (First Draft Pending Revision) (May 10, 2018) ("The JPML should continue to diversify the composition of appointed MDL transferee judges."), *available at* https://judicialstudies.duke.edu/wp-content/uploads/2018/05/Panel-6-Duke-Law-Guidelines-And-Best-Practices-Addressing-Chronic-Failure-To-Diversify-Leadership-Positions-In-The-Practice-Of-Law.docx.

*1031 Exchange Services, Inc., Internal Revenue Service § 1031 Tax Deferred Exchange Litig.*, MDL No. 2054 (J.P.M.L. 2009).

## III.   IN THE ALTERNATIVE, THE NORTHERN DISTRICT OF OHIO IS A SUITABLE FORUM

Absent consolidation in the District of South Carolina, transfer of the Related Actions to the Northern District of Ohio is a sensible alternative. Each of the arguments above as to the center of gravity of this litigation applies to the Northern District of Ohio as well, and its judges are exceptionally qualified in adjudicating MDL matters.

Additionally, while the Southern District of New York has 11 pending MDLs, the Northern District of Ohio has only four, making the Northern District of Ohio a more attractive alternative option than the Southern District of New York.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Panel order the transfer and centralization of the Related Actions, plus any future tag-along actions, to the Hon. Jacquelyn D. Austin, or the Hon. David C. Norton, or the Hon. Joseph F. Anderson in the District of South Carolina. In the alternative, Plaintiffs request that the Related Actions be consolidated in the Northern District of Ohio before one of the judges assigned to a Related Action there.

Respectfully submitted,

Dated:  March 20, 2024

*/s/ Tina Wolfson*
Tina Wolfson
*twolfson@ahdootwolfson.com*
Theodore W. Maya
*tmaya@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Tel: (310) 474-9111

Fax: (310) 474-8585

*Counsel for Plaintiffs Gustave Link, Tracey May,*
*Chris Earls, Ryan Fritzinger, Todd Serotte, William*
*Santoyo, Joshua Dutton, and the putative class*