BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: PASSENGER VEHICLE REPLACEMENT TIRES ANTITRUST LITIGATION | MDL No. 3107 |

**REPLY IN SUPPORT OF PLAINTIFF SAMPAYAN'S MOTION TO TRANSFER AND CENTRALIZE RELATED ACTIONS FOR CONSOLIDATED OR COORDINATED PRETRIAL PROCEEDINGS**

Plaintiff Rena Sampayan ("Movant") [1] respectfully submits this reply in support of her Motion to Transfer and Centralize Related Actions for Consolidated or Coordinated Pretrial Proceedings. There are now at least 28 Related Actions[2] pending in four districts alleging a conspiracy to artificially increase and fix the prices of new replacement tires for vehicles sold in the United States in violation of federal and state antitrust laws: fifteen in the Southern District of New York (or "Southern District"), six in the Northern District of Ohio, five in the District of South Carolina, and two in the Eastern District of Michigan. No responding party opposes centralization pursuant to 28 U.S.C. § 1407. Seven of the eight responding Defendants and most of the responding Plaintiffs support, or do not oppose, centralization in the Southern District.[3] Dkts. 79, 82.

---

[1] Plaintiff in, *Sampayan v. Continental Aktiengesellschaft, et al.*, No. 1:24-cv-00881 (S.D.N.Y.).
[2] Movant originally identified 14 Related Actions. Since then, 14 tag-along actions have been filed in several districts. *See In re Korean Air Lines Co., Ltd. Antitrust Litig.*, 528 F. Supp. 2d 1372, 1373 n.1 (J.P.M.L. 2007) (explaining that subsequently filed potentially related actions would be treated "as potential tag-along actions."). For purposes of this reply, all 28 actions will be referred to as the Related Actions.
[3] Attached as **Appendix A** is a table listing the responding parties' positions. **Appendix B** is an updated Schedule of Related Actions.

1

Given the number of Related Actions and districts, and the consensus of the parties, centralization of the related actions is appropriate. The Southern District—where most of the cases are pending before a single judge—enjoys the support of the majority of the responding parties. This litigation involves an alleged global conspiracy to fix the price of new replacement tires across the entire United States, and the Southern District offers a convenient and accessible forum for all the parties and witnesses. The district has a substantial nexus to the litigation as well as significant judicial resources and experience managing complex multidistrict litigation. The Southern District is accordingly an appropriate transferee forum for this litigation.

## ARGUMENT

### I. ALL RESPONDING PARTIES AGREE THAT THE RELATED ACTIONS SHOULD BE CENTRALIZED UNDER 28 U.S.C. § 1407

All parties that have thus far filed a response—including all responding Defendants—agree that these actions should be centralized under Section 1407. *See* Dkts. 75, 76, 78, 79, 80, 81, 82, 83; *see also In re: Am. Exp. Anti-Steering Rules Antitrust Litig.*, 764 F. Supp. 2d 1343, 1344 (J.P.M.L. 2011) (granting motion when "[a]ll parties support or do not oppose the motion."). As in other complex antitrust cases, "[d]iscovery among the actions will be highly similar. Pretrial motions in all cases, including motions for class certification and *Daubert* motions, also can be expected to be substantially similar" and therefore "[c]entralization affords the parties and the judiciary substantial efficiencies by streamlining pretrial proceedings and reducing the risk of potentially inconsistent pretrial rulings and other obligations." *In re Crop Prot. Prod. Loyalty Program Antitrust Litig.*, 655 F. Supp. 3d 1380, 1381 (J.P.M.L. 2023); *see In re Digital Music Antitrust Litig.*, 444 F. Supp. 2d 1351, 1352 (J.P.M.L. 2006) ("Centralization under Section 1407 is necessary in order to eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel and the judiciary."); *In*

*re: Aluminum Warehousing Antitrust Litig.*, 988 F. Supp. 2d 1362, 1363 (J.P.M.L. 2013) (same). The cases should be centralized under Section 1407.

## II.   THE RELATED ACTIONS SHOULD BE CENTRALIZED IN THE SOUTHERN DISTRICT OF NEW YORK

The Related Actions should be transferred to and centralized in the Southern District of New York.  The first action was filed there.  *See In re Int. Rate Swaps Antitrust Litig.*, 190 F. Supp. 3d 1364, 1366  (J.P.M.L. 2016) (transferring actions to the Southern District of New York and noting "[t]he first-filed action in this litigation" was pending there); *In re: Prograf Antitrust Litig.*, 789 F. Supp. 2d 1380, 1381 (J.P.M.L. 2011) (similar); *In re: Sigg Switzerland (USA), Inc., Aluminum Bottles Mktg. & Sales Pracs. Litig.*, 682 F. Supp. 2d 1347, 1349 (J.P.M.L. 2010) (similar).  The majority of the Related Actions—15 out of 28, which is considerably more than the next closest district—are pending in the Southern District before Judge Ramos, and most of the responding parties either support or do not oppose centralization there.[4]  *See* Dkts. 75 at 1, 79 at 1, 82 at 2; *see also In re Unumprovident Corp. Sec., Derivative & "ERISA" Litig.*, 280 F. Supp. 2d 1377, 1380 (J.P.M.L. 2003) (stating that "thirteen of 22" actions were pending before a single judge in the transferee district); *In re: Refrigerant Compressors Antitrust Litig.*, 626 F. Supp. 2d 1320, 1321 (J.P.M.L. 2009) ("considerably more" actions were pending in the transferee district than any other court); *In re Liquid Aluminum Sulfate Antitrust Litig.*, 159 F. Supp. 3d 1382, 1383 (J.P.M.L. 2016) (selecting transferee district based in part on where "a

---

[4] The responding "SDNY Plaintiffs" in eight related cases in the Southern District of New York support centralization in that district.  Dkt. 82 at 1 n.1.  Defendants Bridgestone Americas, Inc., Continental Tire the Americas, LLC, GITI Tire (USA) Limited, The Goodyear Tire & Rubber Company, Kumho Tire U.S.A., Inc., Michelin North America, Inc., and Nokian Tyres U.S. Operations LLC also support centralization there.  Dkt. 79 at 1.  In addition, Plaintiffs in three cases pending in the Southern District of New York support the Northern District of Ohio but also "do not oppose the Southern District of New York."  Dkt. 75 at 1.

majority of actions" were pending); *In re Microcrystalline Cellulose Antitrust Litig.*, 149 F. Supp. 2d 935, 936 (J.P.M.L. 2001) (noting "most of the actions" were already pending in the transferee district); *In re Carbon Black Antitrust Litig.*, 277 F. Supp. 2d 1380, 1381 (J.P.M.L. 2003) (similar). Movant and other Plaintiffs in the Southern District have also worked cooperatively to eliminate duplication pending a decision from this Panel, including (1) filing a motion to separately consolidate and coordinate the direct and indirect purchaser actions pending in that district on a single master docket, and a procedure for consolidating any subsequently filed actions there; and (2) negotiating a stipulation for a global service waiver with counsel for other plaintiffs and the Defendants. *See* Dkt. 82 at 11. *Cf. In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 268 F. Supp. 3d 1356, 1360 (J.P.M.L. 2017) ("[T]he first-filed action is pending in this district. As discussed, that action is a de facto consolidation of the claims of plaintiffs in eight actions. Thus, establishing this MDL in the District of Kansas recognizes the prior cooperation among these plaintiffs in organizing the litigation."); *In re Fortra File Transfer Software Data Sec. Breach Litig.*, No. MDL 3090, 2024 WL 436478, at *2 (J.P.M.L. 2024) ("More cases are pending in this district than in any other district, and [the transferee judge] has taken preliminary steps to organize this litigation.").

In this litigation involving large domestic, European, and Asian corporate defendants, "discovery is certain to be international in scope." *In re: N. Sea Brent Crude Oil Futures Litig.*, 978 F. Supp. 2d 1384, 1385 (J.P.M.L. 2013) (centralizing actions in the Southern District of New York). The Southern District "offers an accessible metropolitan location that is geographically convenient for many of this docket's litigants and counsel" and "is equipped with the resources that this complex antitrust docket is likely to require." *In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1373 (J.P.M.L. 2005); *see, e.g., In re: Keurig Green Mountain Single-Serve*

*Coffee Antitrust Litig.*, 24 F. Supp. 3d 1361, 1363 ("We conclude that the Southern District of New York is an appropriate transferee district for this litigation. The majority of actions are pending in this district, which is conveniently located for this nationwide litigation."); *In re Literary Works in Elec. Databases Copyright Litig.*, 2000 WL 33225502, at *1 (J.P.M.L. 2000) (even when "many federal districts could be viewed as an appropriate transferee forum" the actions were centralized in the Southern District of New York). The physical location of responsive documents and information is increasingly "irrelevant" in this modern ESI era. *See, e.g., Griffin Cap. Co., LLC v. Essential Properties Realty Tr., Inc.*, No. 1:18-CV-4255-MHC, 2019 WL 5586547, at *6 (N.D. Ga. Jan. 18, 2019) (citation omitted).

While some Plaintiffs suggest the district lacks a sufficient nexus to the litigation (*e.g.*, Dkt. 80 at 5), the parent of Defendant Pirelli Tire LLC—the one Defendant that opposes transfer to the Southern District—is headquartered in New York and maintains offices there, and relevant third parties are also located in the district. Dkt. 82 at 11-13; Dkt. 79 at 4. Thus, witnesses and evidence are likely to be found in the district. And notably, "[n]early all responding defendants"—seven out of the eight—support centralization in the district. *In re Diisocyanates Antitrust Litig.*, 341 F. Supp. 3d 1376, 1378 (J.P.M.L. 2018); *see In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1391 (J.P.M.L. 2014) ("The overwhelming majority of responding defendants support this district as their first or second choice, and it is easily accessible for this nationwide litigation."); *In re Standard Auto. Corp. Retiree Benefits "ERISA" Litig.*, 431 F. Supp. 2d 1357, 1358 (J.P.M.L. 2006) ("most defendants and the responding plaintiffs" supported the transferee forum). Pirelli Tire LLC and some Plaintiffs stress that their preferred forums are more geographically central (*e.g.*, Dkts. 78 at 7-9, Dkt. 81 at 6-7), but because this litigation "is bi-coastal in nature, with defendants located in Asia and Europe," the interests of convenience do

not require consolidating the actions in the most geographically central district for the Defendants' subsidiaries in the United States. *In re: Vehicle Carrier Servs. Antitrust Litig.*, 978 F. Supp. 2d 1382, 1383 (J.P.M.L. 2013) (centralizing the "bi-coastal" actions in New Jersey).

Finally, the docket conditions in the Southern District are at least as favorable as any other forum in play, as the median time for disposition is shorter than the other proposed transferee courts. *See* Dkts. 79 at 6, 82 at 13. To the extent some argue that the Southern District is not an appropriate transferee forum considering the number of MDLs presently pending there (*e.g.,* Dkt. 81 at 7), they ignore that the district has many experienced MDL judges, is substantially larger than the other districts, and is "equipped with the resources that this complex docket is likely to require." *In re Comp. of Managerial, Pro. & Tech. Emps. Antitrust Litig.*, 206 F. Supp. 2d 1374, 1375 (J.P.M.L. 2002); *see also In re: Mun. Derivatives Antitrust Litig.*, 560 F. Supp. 2d 1386, 1388 (J.P.M.L. 2008). Transferring the cases to the district would allow the Panel to either assign the cases to Judge Ramos, an experienced judge "who has not yet had the opportunity to preside over an MDL and who already presides over" the majority of the Related Actions, *In re Deere & Co. Repair Servs. Antitrust Litig.*, 607 F. Supp. 3d 1350, 1351 (J.P.M.L. 2022), or to another capable judge. *See In re Acetaminophen - ASD/ADHD Prod. Liab. Litig.*, 637 F. Supp. 3d 1372, 1376 (J.P.M.L. 2022) (selecting the district in part because of presence of experienced transferee judges); *see also In re: Potash Antitrust Litig. (NO. II)*, 588 F. Supp. 2d 1364 (J.P.M.L. 2008) ("The majority of the known actions in this docket" were already consolidated before the transferee judge).

As most of the responding Plaintiffs and Defendants support the district either as their first or second choice, the Southern District of New York "stands out as an appropriate transferee forum" since "no other forum has comparable support." *In re: Transitions Lenses Antitrust*

6

*Litig.*, 730 F. Supp. 2d 1381, 1382 (J.P.M.L. 2010); *see In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 228 F. Supp. 2d 1379, 1381 (J.P.M.L. 2002) (transferee district was "the forum choice of the majority of both plaintiffs and defendants" and "an accessible and convenient location for both the domestic and foreign . . . parties"); *In re Beef Indus. Antitrust Litig.*, 419 F. Supp. 720, 722 (J.P.M.L. 1976) ("[T]his district is the first choice of the majority of the defendants and is the second choice of almost all other parties to these actions."); *In re Chicago Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*, 325 F. Supp. 3d 1374, 1377 (selecting forum that was "the first choice of plaintiffs in ten actions and the second choice of plaintiffs in two" others). The Related Actions should therefore be transferred to and centralized in the Southern District of New York.

## CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Panel transfer and centralize the Related Actions in the Southern District of New York.


Dated: March 27, 2024                                    Respectfully submitted,

By:  /s/ *Dena C. Sharp*

Dena C. Sharp
Adam E. Polk
Kyle P. Quackenbush
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel:  415-981-4800
Fax: 415-981-4846
dsharp@girardsharp.com
apolk@girardsharp.com
kquackenbush@girardsharp.com

*Counsel for Movant and Plaintiff Sampayan*